[Civ. No. 8364.   Third Dist.   Oct. 26, 1954.]

ELNA JESSIE CLINE, Respondent, v. FRED FESTERSEN, as Administrator, etc., Appellant.

*Assigned by Chairman of Judicial Council.

F. H. Bowers and Thomas E. Srednik for Appellant.

Albert Picard, Raymond N. Baker and Barrett & McConnell for Respondent.

SCHOTTKY, J.—Plaintiff commenced this action against the administrator of the estate of William Raymond Hathaway, deceased, for a determination that she is the owner of an undivided one-half of his entire estate. Her fourth amended complaint, upon which the action went to trial, alleged an oral agreement between decedent and plaintiff that they "should pool their earnings and share equally in their joint accumulations." Said complaint set forth in detail the agreement between decedent and plaintiff and the pooling of their work and labor for a period from 1927 to decedent's death on March 4, 1949. The trial court found that the agreement had been made, that plaintiff had performed her part of it and judgment was entered awarding plaintiff a one-half interest in the entire estate. Defendant administrator has appealed from said judgment.

Appellant urges as grounds for a reversal of the judgment: (1) That the findings and judgment are not supported by the evidence; (2) that the court erred in permitting respondent to testify as to statements of decedent; and (3) that the statute of frauds bars respondent's action.

Before discussing these contentions we shall summarize briefly the evidence as shown by the record, bearing in mind the familiar rule that all conflicts must be resolved in favor of respondents and all legitimate and reasonable inferences must be indulged in to uphold the judgment, and that when a judgment is attacked as being unsupported by the evidence, the power of the appellate court begins and ends with a deter-

mination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trial court. (*Juchert* v. *California Water Service Co.*, 16 Cal.2d 500 [106 P.2d 886].)

In 1927 plaintiff and W. R. Hathaway commenced to live together as man and wife in the same house. Plaintiff acted in the capacity of a wife, doing the normal household duties. Decedent's son and daughter lived with them until approximately 1935. Decedent furnished plaintiff with monies to purchase groceries and other household necessities. While living at Bay Farm Island, they had a flock of chickens. Among plaintiff's other duties she sold eggs and chickens and used the proceeds to purchase groceries and other household necessities. Decedent worked at the Southern Pacific shops until sometime in 1930 or 1931. He then worked at various odd jobs for a couple of years and then worked for the WPA until 1935. During this time for about a year and a half, plaintiff also worked at the Highland Hospital and Alameda Clinic. All monies earned by both parties were pooled and used for the household expenses. It was not shown that plaintiff ever received any compensation for her services. In 1935 decedent inherited $2,500 cash, 525 shares of Union Oil Company stock and a few shares of General Motors stock from the estate of an aunt in New York. He was advanced $1,500 from the estate so that he could make the necessary trip to New York in order that the estate could be settled. After decedent returned to California he lived with his sister-in-law for a few weeks and then he returned to live with plaintiff at Bay Farm Island. Plaintiff testified that in 1937 decedent told her "everything was to be 50-50," which the court found to be an oral agreement to pool their earnings and properties and share equally in all accumulations by each and both of them. After his return from New York, decedent started buying real estate. Most of the places were in a dilapidated condition and decedent would improve them and subsequently sell them. Plaintiff assisted decedent in the rebuilding and remodeling of the houses by doing cleanup work, painting and other chores around the places. This work was in addition to the household duties she performed. In December, 1946, decedent purchased an auto court in Roseville, California. The purchase price was paid with monies obtained from the sale of the house in which they were living at the time, monies which had been inherited from his sister, and other monies, part of which was a loan from a bank for about $12,000. The total purchase

price of the auto court was $35,750. Before acquiring the auto court decedent reaffirmed his previous statement which he had made quite a few years before that everything between them was to be "50-50," that they would own the auto court and that they would equally participate in the business of managing and maintaining the auto court and share equally in its profits. Just prior to this time decedent had asked plaintiff if she wanted to quit work and get a place of their own in the country, so that they wouldn't have to work so hard.

The deed to the auto court was executed to decedent, as a single man. This was the same manner in which he had held title to all the other previous properties. The auto court was "run down" and in a very bad condition when they took possession. Plaintiff and decedent both worked hard to fix up the motel. For a short time of a few months, decedent's son worked and helped them. He was compensated for his efforts at a small weekly salary. Except for the short time that the son worked, plaintiff and decedent were the only ones who did the work at the auto court. They lived on the premises. Plaintiff worked at the management of the auto court in providing patrons with accommodations, preparing the cabins for rental, maintaining the financial records and purchasing supplies used at the auto court. She had access to all the money and paid all the bills. Besides the work of running the auto court, she maintained a household and did the normal duties expected of a wife. All of the above was conducted out of the proceeds of the auto court which were earned by their joint operation. At no time did plaintiff ever receive any compensation for her services. In March, 1949, Mr. Hathaway died and his son was appointed as his administrator.

We are satisfied that the evidence supports the conclusion that decedent, William Raymond Hathaway, in 1937 and again in 1946 agreed with respondent that "everything" they acquired would be owned in common, or, to use decedent's words, their property would be owned "50-50." The trial court so found, and as stated by the trial judge in his oral opinion: "He makes the statement and makes the agreement that everything that they might have would be considered jointly" and "certainly justice and fairness would prompt that." The trial court stated further: "The Court is of the opinion it was definitely understood all of their accumulations of every kind and character should be considered and treated as their joint property."

A situation quite similar to the one involved in the instant case appears in *Garcia* v. *Venegas*, 106 Cal.App.2d 364 [235 P.2d 89], where the parties without benefit of marriage lived together as man and wife from May, 1942, to July, 1947. In that case plaintiff testified that defendant had on many occasions during that time said "that everything was for both him and her and that everything was for both of them." On appeal the court reversed the judgment of the trial court with directions to amend the findings and judgment so as to declare that plaintiff owned a one-half interest in the real property and to determine the amount of money expended by defendant in perfecting title and protecting the "common property." The court said at page 368:

"This was not a putative marriage. The parties knew they were not married. Accordingly, if there were no agreement between them concerning property acquired or compensation for services rendered while living together, the law would leave them in the position in which they placed themselves. (*Oakley* v. *Oakley*, 82 Cal.App.2d 188, 190-192 [185 P.2d 848], and cases cited.) But when, as here, they entered into a contract to pool their work and earnings and share equally in the property accumulated therewith, and the illicit relationship was not so involved in the contract as to render it illegal, the law recognizes the contract and enforces the rights arising out of it. Such a joint business enterprise, somewhat akin to a partnership, is one which any two persons (two women or two men, for example) might undertake. In *Bacon* v. *Bacon*, 21 Cal.App.2d 540 [69 P.2d 884], an action brought by the woman against the man to establish an equitable interest in and quiet title to certain property, it appeared that when they began living together they mutually agreed that their future earnings and all property acquired therewith should be owned in common. . . . The court held that the plaintiff was entitled to a decree quieting title to an undivided one-half interest in the real property so acquired."

In *Vallera* v. *Vallera*, 21 Cal.2d 681 [134 P.2d 761], the Supreme Court said at page 685:

"Plaintiff's lack of good faith in alleging the belief that she had entered into a valid marriage would not, however, preclude her from recovering property to which she would otherwise be entitled. If a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property. (*Bacon* v. *Bacon*,

21 Cal.App.2d 540 [69 P.2d 884] ; *Mitchell* v. *Fish,* 97 Ark. 444 [134 P. 940, 36 L.R.A.N.S. 838] ; see *Feig* v. *Bank of America etc. Assn., supra* [5 Cal.2d 266 (54 P.2d 3)] ; *Bracken* v. *Bracken,* 52 S.D. 252, 256 [217 N.W. 192] ; *Hayworth* v. *Williams,* 102 Tex. 308 [116 S.W. 43, 132 Am.St.Rep. 879].)''

There is no merit in appellant's contention the court erred in permitting respondent to testify as to the statements of decedent regarding their agreement. Appellant bases this contention upon the provision of section 1880, subdivision 3, of the Code of Civil Procedure, which reads:

''The following persons cannot be witnesses:

.   .   .   .   .   .   .   .   .   .   .   .   .

''3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted, against an executor or administrator upon a claim, or demand against the estate of a deceased person, as to any matter or fact occurring before the death of such deceased person.''

Appellant cites a number of cases in support of this contention but an examination of these cases shows that in each case plaintiff was suing upon a ''claim or demand'' against the estate, whereas in the instant case the complaint is based upon an oral agreement between respondent and decedent that the parties were to own everything ''50-50'' and that they would own all their property in equal shares. The decisions recognize the distinction between that kind of an action and the litigation commenced by a claimant on a demand for money or services, and are adverse to the contention of appellant.

In *Estate of Wahlefeld,* 105 Cal.App. 770 [288 P. 870], the court in a proceeding for distribution of an estate where the surviving wife sues to have the property declared to be community property pursuant to an oral agreement made during the lifetime of the decedent, held her testimony to be admissible under the provisions of section 1880, subdivision 3, of the Code of Civil Procedure. The court at page 773, in refuting the arguments of the administrator, said:

''The evidence having been admitted without proper objection, we will nevertheless discuss its admissibility and sufficiency to sustain the order distributing the estate to respondent. This is not a claim or demand against the estate of a deceased person but a petition for an order declaring that the property was not the separate property of the deceased. It was not a claim for an amount due prior to the death of

the deceased. It was not against the administrator upon a claim or demand against the estate of the deceased.''

Thus the testimony of the plaintiff herein was clearly admissible to establish her share or interest in the property in accordance with the oral agreement. In *Streeter* v. *Martinelli*, 65 Cal.App.2d 65 [149 P.2d 725], the same objection was raised, and the court in disposing of this point said at page 72:

"As also pointed out in California Jurisprudence (vol. 11A, 893): 'Suits to recover property or establish title thereto against the estate do not aim to take from the estate or diminish it and are not claims against it, and the plaintiff may testify in his own behalf. Hence, neither an action to have deeds absolute declared mortgages and for reconveyances upon payment of the amount adjudged due, nor a suit to declare a partnership in property and for an accounting of the proceeds of its sale is one upon a claim against the estate. So also a suit to set aside a deed to the decedent for fraud in procuring it is not a claim against the estate, but is brought to establish the fact that the land never became a part of his estate.' Moreover, it is well settled that an action to quiet title as against an estate is not a controversy involving a claim or demand against the estate within the meaning of subdivision 3 of section 1880. (11A Cal.Jur. 893; *Hector* v. *Superior Court*, 15 Cal.App.2d 552 [59 P.2d 591]; *In re Hill*, 13 Cal.App.2d 326 [57 P.2d 155].)''

■ Nor is there merit in appellant's contention that the statute of frauds, section 1973, subdivisions 1, 4 and 6, constitute a bar to respondent's action. The record in the instant case shows that there was a fiduciary and confidential relationship between decedent and respondent for 22 years, and during that entire time they worked together in the accumulation of property which culminated in the acquisition of the motel at Roseville, California. The respondent trusted and believed decedent's statements to her that everything would be owned in common, and the decedent never repudiated this agreement. In such a case where the respondent for the long period they spent together in hard work and labor throughout the depression and in making a financial success out of their last business venture, the motel, the decedent, had he been a party to the action, and after his death the administrator of his estate, the appellant herein, is estopped to assert the statute of frauds as a defense. As this court said in the recent case of *Sancha* v. *Arnold*, 114 Cal.App.2d 772 [251 P.2d 67, 252 P.2d 55], at page 780, in which case property

rights between parties to a putative marriage and the rights of plaintiff under an oral agreement to share equally in their business ventures were involved:

" '. . . The doctrine of estoppel to assert the statute of frauds has been consistently applied by the courts of this state to prevent fraud that would result from refusal to enforce oral contracts in certain circumstances. Such fraud may inhere in the unconscionable injury that would result from denying enforcement of the contract after one party has been induced by the other seriously to change his position in reliance on the contract . . . , or in the unjust enrichment that would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. . . .' (*Monarco* v. *Lo Greco*, 35 Cal.2d 621, 623, 624 [220 P.2d 737].)"

No other points raised require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.