[No. D005340. Fourth Dist., Div. One. June 23, 1988.]

DONNIS G. WHORTON, Plaintiff and Appellant, v.
BENJAMIN F. DILLINGHAM III, Defendant and Respondent.

**COUNSEL**

Hendrix & Aller, Daniel A. Martorella, Norman P. Spevack and Jan Stiglitz for Plaintiff and Appellant.

Barwick & Knowlton, Robert W. Knowlton, Timothy C. Rutherford, Rushall, McGeever & Sappington and Eileen L. McGeever for Defendant and Respondent.

## Opinion

**WORK, J.**—Donnis G. Whorton appeals a judgment dismissing his action against Benjamin F. Dillingham III after the court sustained a demurrer without leave to amend. Whorton claims property rights based on an oral cohabiters' agreement with which he fully complied but which Dillingham breached after approximately seven years. The trial court found the pleadings showed the contract was unenforceable as expressly and inseparably based on sexual services. We conclude Whorton has alleged consideration for the purported contract substantially independent of sexual services, and reverse the judgment.

### I

On appeal from a judgment of dismissal arising from the sustaining of a demurrer, we accept the facts pleaded in the complaint as true. *(Noguera v. North Monterey County Unified Sch. Dist.* (1980) 106 Cal.App.3d 64, 66 [164 Cal.Rptr. 808].)

The alleged facts include the following. At the time the parties began dating and entered into a homosexual relationship, Whorton was studying to obtain his Associate in Arts degree, intending to enroll in a four-year college and obtain a Bachelor of Arts degree. When the parties began living together in 1977, they orally agreed that Whorton's exclusive, full-time occupation was to be Dillingham's chauffeur, bodyguard, social and business secretary, partner and counselor in real estate investments, and to appear on his behalf when requested. Whorton was to render labor, skills, and personal services for the benefit of Dillingham's business and investment endeavors. Additionally, Whorton was to be Dillingham's constant companion, confidant, traveling and social companion, and lover, to terminate his schooling upon obtaining his Associate in Arts degree, and to make no investment without first consulting Dillingham.

In consideration of Whorton's promises, Dillingham was to give him a one-half equity interest in all real estate acquired in their joint names, and in all property thereafter acquired by Dillingham. Dillingham agreed to financially support Whorton for life, and to open bank accounts, maintain a positive balance in those accounts, grant Whorton invasionary powers to savings accounts held in Dillingham's name, and permit Whorton to charge on Dillingham's personal accounts. Dillingham was also to engage in a homosexual relationship with Whorton. Importantly, for the purpose of our analysis, the parties specifically agreed that any portion of the agreement found to be legally unenforceable was severable and the balance of the provisions would remain in full force and effect.

Whorton allegedly complied with all terms of the oral agreement until 1984 when Dillingham barred him from his premises. Dillingham now refuses to perform his part of the contract by giving Whorton the promised consideration for the business services rendered.

## II

■ Adults who voluntarily live together and engage in sexual relations are competent to contract respecting their earnings and property rights. Such contracts will be enforced "unless expressly and inseparably based upon an illicit consideration of sexual services . . . ." *(Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 672 [134 Cal.Rptr. 815, 557 P.2d 106].) One cannot lawfully contract to pay for the performance of sexual services since such an agreement is in essence a bargain for prostitution. *(Id.* at p. 674.)

A standard which inquires whether an agreement involves or contemplates a sexual relationship is vague and unworkable because virtually all agreements between nonmarital (and certainly, marital) cohabiters involve or contemplate a mutual sexual relationship. Further, a compact is not totally invalid merely because the parties may have contemplated creating or continuing a sexual relationship, but is invalid only to the extent it rests upon a consideration of sexual services. *(Id.* at pp. 670-671.) Thus, "even if sexual services are part of the contractual consideration, any *severable* portion of the contract supported by independent consideration will still be enforced." *(Id.* at p. 672.) For instance, contracting parties may make a variety of arrangements regarding their property rights—i.e., agree to pool their earnings and to hold all property in accord with the law governing community property, or to treat monetary earnings and property as separate property of the earning partner, or to keep property separate but compensate one party for services which benefit the other, or to pool only a part of their earnings and property, etc. *(Id.* at p. 674, fn. 10.) "So long as the agreement does not rest upon illicit meretricious consideration, the parties may order their economic affairs as they choose, and no policy precludes the courts from enforcing such agreements." *(Id.* at p. 674.)

■ Regarding the issue of what constitutes adequate consideration, *Marvin* notes "[a] promise to perform homemaking services is, of course, a lawful and adequate consideration for a contract . . . ." *(Id.* at p. 670, fn. 5.) *Marvin* expressly rejects the argument that the partner seeking to enforce the contract must have contributed either property or services additional to ordinary homemaking services. *(Ibid.)*

In *Marvin,* the plaintiff alleged the parties orally agreed that while they lived together they would combine their efforts and earnings and would

share equally all property accumulated as a result of their efforts, that they would hold themselves out to the general public as husband and wife, that plaintiff would render services as companion, homemaker, housekeeper and cook, that plaintiff would give up her career in order to provide these services full-time, and that in return defendant would provide for all of plaintiff's financial support for the rest of her life. (*Id.* at p. 666.) The court stated: " . . . plaintiff alleges that the parties agreed to pool their earnings, that they contracted to share equally in all property acquired, and that defendant agreed to support plaintiff. The terms of the contract as alleged do not rest upon any unlawful consideration." (*Id.* at pp. 674-675.)

The holding in *Marvin* suggests the court determined that the contract before it did not *expressly* include sexual services as part of the consideration, and thus, it did not need to reach the issue of whether there were severable portions of the contract supported by independent consideration. The only reference to sexual services in *Marvin's* alleged facts was that the parties agreed to hold themselves out to the public as husband and wife, which apparently the court did not interpret as expressly indicating sexual services were part of the consideration. (See *Alderson* v. *Alderson* (1986) 180 Cal.App.3d 450, 462-464 [225 Cal.Rptr. 610] [even though couple engaged in sexual relations and plaintiff perceived this as part of her "role," no evidence that implied agreement between the parties explicitly rested upon a consideration of meretricious sexual services].)

## III

■ Unlike the facts of *Marvin,* here the parties' sexual relationship was an express, rather than implied, part of the consideration for their contract. The contract cannot be enforced to the extent it is dependent on sexual services for consideration, and the complaint does not state a cause of action to the extent it asks for damages from the termination of the sexual relationship.

■ The issue here is whether the sexual component of the consideration is severable from the remaining portions of the contract.[1] We reiterate the guiding language of *Marvin* v. *Marvin, supra,* 18 Cal.3d at page 672: "[E]ven if sexual services are part of the contractual consideration, any *severable* portion of the contract supported by independent consideration will still be enforced." One test for determining the enforceability of a contract having both lawful and unlawful factors for consideration is stated in the Restatement Second of Contracts, section 183, "If the parties' perfor-

---

[1] Dillingham does not assert *Marvin* is inapplicable to same-sex partners, and we see no legal basis to make a distinction.

mances can be apportioned into corresponding pairs of part performances so that the parts of each pair are properly regarded as agreed equivalents and one pair is not offensive to public policy, that portion of the agreement is enforceable by a party who did not engage in serious misconduct." (See also Civ. Code, § 1599: "Where a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest.")

*Tyranski* v. *Piggins* (1973) 44 Mich.App. 570 [205 N.W.2d 595, 596-597], evaluates the issue of severability as follows: "Professor Corbin and the drafters of the Restatement of Contracts both write that while bargains in whole or in part in consideration of an illicit relationship are unenforceable, agreements between parties to such a relationship with respect to money or property will be enforced if the agreement is independent of the illicit relationship.

"Neither these authorities nor the large body of case law in other jurisdictions . . . articulate a guideline for determining when the consideration will be regarded as 'independent' and when it is so coupled with the meretricious acts that the agreement will not be enforced. A pattern does, however, emerge upon reading the cases.

"Neither party to a meretricious relationship acquires, by reason of cohabitation alone, rights in the property accumulations of the other during the period of the relationship. But where there is an express agreement to accumulate or transfer property following a relationship of some permanence and *an additional consideration in the form of either money or of services, the courts tend to find an independent consideration.*

"Thus, a plaintiff who can show an actual contribution of money, pursuant to an agreement to pool assets and share accumulations, will usually prevail. Services, such as cooking meals, laundering clothes, 'caring' for the decedent through sickness, have been found to be adequate and independent considerations in cases where there was an express agreement." (Fns. omitted; italics added.)[2]

Of particular significance is the decision in *Latham* v. *Latham* (1976) 274 Ore. 421 [547 P.2d 144]. In *Latham,* the court overruled a demurrer where

[2] In *Tyranski* v. *Piggins, supra,* 205 N.W.2d at pages 596-597, the plaintiff cleaned the house, did the marketing, cooked the food, did the decedent's personal laundry, acted as his hostess, cared for him when he was sick, and contributed money towards the purchase of a house in which the unmarried plaintiff and the decedent resided. The court held it was proper to enforce the parties' express agreement to convey the house, which was held in the name of the decedent, to the plaintiff.

complainant pleaded an agreement to live with defendant, to care for, and to furnish him with all the amenities of married life. The court recognized the alleged agreement specifically included the sexual services implicit in cohabitation. (*Id.* at p. 145.) Thus, as here, the sexual aspect of the agreement appeared on the face of the complaint. In overruling a demurrer based on public policy, the court stated it was not validating an agreement in which sexual intercourse was the only or primary consideration, but only one of the factors incident to the burdens and amenities of married life. (*Id.* at p. 147.)

Thus, the crux of our analysis is whether Whorton's complaint negates as a matter of law, a trier of fact finding he made contributions, apart from sexual services, which provided independent consideration for Dillingham's alleged promises pertaining to financial support and property rights. The services which plaintiff alleges he agreed to and did provide included being a chauffeur, bodyguard, secretary, and partner and counselor in real estate investments. If provided, these services are of monetary value, and the type for which one would expect to be compensated unless there is evidence of a contrary intent. Thus, they are properly characterized as consideration independent of the sexual aspect of the relationship. By way of comparison, such services as being a constant companion and confidant are not the type which are usually monetarily compensated nor considered to have a "value" for purposes of contract consideration, and, absent peculiar circumstances, would likely be considered so intertwined with the sexual relationship as to be inseparable. (Cf. *Walters* v. *Calderon* (1972) 25 Cal.App.3d 863, 873 [102 Cal.Rptr. 89] [love and affection do not constitute valuable consideration necessary to support validity of contractual promise].)

We hold that Whorton—based on allegations he provided Dillingham with services of a chauffeur, bodyguard, secretary, and business partner—has stated a cause of action arising from a contract supported by consideration independent of sexual services.[3] Further, by itemizing the mutual promises to engage in sexual activity, Whorton has not precluded the trier of fact from finding those promises are the consideration for each other and independent of the bargained for consideration for Whorton's employment.

We believe our holding does not conflict with that in *Jones* v. *Daly* (1981) 122 Cal.App.3d 500, 508 [176 Cal.Rptr. 130], where services provided by

---

[3] This is, of course, an appeal from a demurrer where we assume Whorton can prove all the facts as alleged and we liberally construe all the allegations. Whorton will have to prove he in fact did provide compensable services in exchange for the alleged promises, or that he is otherwise entitled to equitable relief. (See, e.g., *Marvin* v. *Marvin, supra,* 122 Cal.App.3d at pp. 873-874 [176 Cal.Rptr. 555] and *Taylor* v. *Polackwich* (1983) 145 Cal.App.3d 1014, 1022-1023 [194 Cal.Rptr. 8] [no promises made; and no unjust enrichment, wrongdoing, or detriment warranting equitable remedy].)

the complaining homosexual partner were limited to "lover, companion, homemaker, traveling companion, housekeeper and cook . . . ." The court there found the pleadings unequivocally established that plaintiff's rendition of sex and other services naturally flowing from sexual cohabitation was an inseparable part of the consideration for the so-called cohabitor's agreement. The court stated: "According to the allegations of the complaint, the agreement provided that the parties would share equally the earnings and property accumulated as a result of their efforts while they lived together and that Daly would support plaintiff for the rest of his life. *Neither the property sharing nor the support provision of the agreement rests upon plaintiff's acting as Daly's traveling companion, housekeeper or cook as distinguished from acting as his lover.* The latter service forms an inseparable part of the consideration for the agreement and renders it unenforceable in its entirety." *(Jones* v. *Daly, supra,* 122 Cal.App.3d at p. 509; italics added.)

*Jones* is factually different in that the complaining party did not allege contracting to provide services apart from those normally incident to the state of cohabitation itself.[4] Further, Jones's complaint stated the agreement was premised on that they "would hold themselves out to the public at large as cohabiting mates. . . ." *(Id.* at p. 505.) In contrast, Whorton's complaint separately itemizes services contracted for as companion, chauffeur, bodyguard, secretary, partner and business counselor. These, except for companion, are significantly different than those household duties normally attendant to nonbusiness cohabitation and are those for which monetary compensation ordinarily would be anticipated.[5] Accepting Whorton's allegations as true, we cannot say as a matter of law any illegal portion of the contract is not severable so as to leave the balance valid and enforceable, especially where it is alleged the parties contemplated such a result when entering into their agreement.

---

[4] The reasoning in *Jones* was followed in *Taylor* v. *Fields* (1986) 178 Cal.App.3d 653, 665 [224 Cal.Rptr. 186], where the plaintiff alleged she acted as the decedent's confidante, friend, travel companion and lover in return for promises of lifetime financial care. *Taylor* holds that, as in *Jones,* the plaintiff's rendering of sexual services was inseparable from the rest of the contract, since nothing in the alleged oral agreement rested upon her acting as a friend, traveling companion, or confidante as distinguished from her role as a paramour. *(Ibid.)* Thus, *Taylor* and *Jones* both involved the type of services for which the benefits of cohabitation alone are the normal recompense. *Taylor's* alternative holding concludes no cause of action was stated since the plaintiff, who had been the mistress of the married decedent for 42 years, did not live with the decedent and thus, the element of cohabitation underlying the *Marvin* case was not present. *(Id.* at pp. 658, 660-663.)

[5] Most of the numerous cases cited in *Marvin* where nonmarital cohabiters' oral agreements to pool earnings were upheld involved contributions other than normal homemaking services. However, *Marvin* states homemaking services alone are lawful consideration. *(Marvin* v. *Marvin, supra,* 18 Cal.3d, p. 670, fn. 5; see also *Watkins* v. *Watkins* (1983) 143 Cal.App.3d.651, 655 [192 Cal.Rptr. 54].)

## IV

*Statute of frauds*

██ Dillingham asserts the oral agreement is invalid under the statute of frauds, requiring agreements not to be performed within one year or for the sale of an interest in real property to be written. (Civ. Code, § 1624, subds. (a) and (c).) In *Marvin* v. *Marvin, supra,* 18 Cal.3d at page 674, footnote 10, the court noted in cases involving agreements between nonmarital partners, the majority of the agreements were oral and the courts have expressly rejected defenses grounded upon the statute of frauds.

*Marvin* cites *Cline* v. *Festersen* (1954) 128 Cal.App.2d 380, 386 [275 P.2d 149]. In *Cline,* the court rejected a statute of frauds argument on the basis of estoppel, reasoning that the nonmarital partner seeking to obtain her promised share of the property had trusted and worked for many years in reliance on the promise, and her partner had never repudiated the agreement. *Cline* relies on the principle that the doctrine of estoppel to assert the statute of frauds should be applied to prevent fraud and unconscionable injury that would result from refusal to enforce oral contracts in certain circumstances—i.e., after one party has been induced by the other seriously to change position in reliance on the contract, or when unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to rely upon the statute. (*Id.* at p. 387.)

Whorton alleges he stopped his education earlier than planned to assist Dillingham in his business ventures in exchange for promises of support and sharing of accumulated property. These facts are sufficient to estop Dillingham from raising the statute of frauds by way of demurrer to bar enforcement of the contract.

*Statute of limitations*

Dillingham meritlessly asserts the action is barred by the statute of limitations.

██ The general rule is that a cause of action for breach of contract accrues at the time of breach. (See 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 375, p. 402.) ██ A *Marvin*-type contract is breached when one partner terminates the relationship. (*Estate of Fincher* (1981) 119 Cal.App.3d 343, 352 [174 Cal.Rptr. 18].) The statute of limitations for an action upon a contract not founded on a writing is two years. (Code Civ. Proc., § 339, subd. 1.) ██ The complaint states the breach occurred "on or about the latter part of 1984." The complaint was filed in June 1986. The

complaint on its face does not show the contract cause of action is barred by the statute of limitations.

For the same reasons, the complaint on its face does not show the three-year fraud limitation has expired.[6]

Additionally, a cause of action based on equitable grounds is not barred, for which the statute of limitations is four years. (*Nelson* v. *Nevel* (1984) 154 Cal.App.3d 132, 140-141 [201 Cal.Rptr. 93]; Code Civ. Proc., § 343; see generally, *Marvin* v. *Marvin, supra,* 18 Cal.3d at p. 684, fn. 25.)

*Terminable at will*

 Finally, Dillingham contends that under Labor Code section 2922, the contract was terminable at will.[7] That section has no applicability to the issues here. This case does not involve an employment contract within the purview of the Labor Code, but rather a cohabiters' agreement regarding how two nonmarital partners have agreed to regulate their economic affairs. Of course, one partner has a right to end the relationship, and the only issue is whether the facts support a monetary and/or property award to one of the partners.

DISPOSITION

The judgment is reversed.

Wiener, Acting P. J., and Benke, J., concurred.

Respondent's petition for review by the Supreme Court was denied August 31, 1988.

---

[6] The caption of the complaint does not refer to fraud, stating: "Complaint for damages for breach of express oral contract; breach of implied in fact contract; to impress a constructive trust; for declaratory relief; and for injunctive relief." However, the body of the complaint states facts in support of, and refers to, a fraud cause of action.

[7] Labor Code section 2922 states: "An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period greater than one month."