Filed 1/27/16  Murray v. Flannery CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ANDREA MURRAY,<br><br>      Plaintiff, Cross-defendant and Respondent,<br><br>      v.<br><br>PATRICK FLANNERY,<br><br>      Defendant, Cross-complainant and Appellant. | B255917<br><br>(Los Angeles County<br>Super. Ct. No. BC438538) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Modified in part, reversed in part and remanded with directions, and affirmed in part.

Law Offices of Philip Kaufler and Philip Kaufler for Plaintiff, Cross-defendant and Respondent.

Daneshrad Law Firm and Joseph Daneshrad for Defendant, Cross-complainant and Appellant.

Defendant, cross-complainant and appellant Patrick Flannery (Flannery) appeals a judgment following a trial of a *Marvin*[1] action brought by plaintiff, cross-defendant and respondent Andrea Murray (Murray).

Flannery contends, inter alia, Murray's claims are barred by the statute of frauds and the statute of limitations, the trial court erred in awarding noneconomic damages for fraud, and the trial court erred in granting nonsuit with respect to two of his claims.

For the reasons discussed below, the judgment is modified to strike the award to Murray of $150,000 in noneconomic damages and $68,000 in punitive damages. We also reverse the declaratory relief portion of the judgment awarding Murray 50 percent of the fire settlement proceeds, and remand for preparation of a statement of decision in that regard. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*[2]

Flannery and Murray had a nonmarital relationship over a period of 20 years and have three children together. In 1999, they decided that she would sell her home in Garden Grove, he would sell his home in Northridge, and they would buy an agricultural property together. In January 2003, they closed escrow on a 13-acre horse boarding ranch (the Ranch) in Chatsworth that had a small dilapidated house on it. Murray contributed $123,000 from the sale of her family home toward the down payment and improvements. Flannery contributed $100,000 which he obtained by refinancing his Northridge home instead of selling it. Although Murray contributed the majority of the

---

[1]    *Marvin v. Marvin* (1976) 18 Cal.3d 660 recognized the principle "that adults who voluntarily live together and engage in sexual relations are . . . as competent as any other persons to contract respecting their earnings and property rights . . . [and s]o long as the agreement does not rest upon illicit meretricious consideration, the parties may order their economic affairs as they choose, and no policy precludes the courts from enforcing such agreements." (*Id*. at p. 674.)

[2]    We summarize the facts in accordance with the general rule that an appellate court will view the evidence in the light most favorable to the respondent, here, Murray. (*Gyerman v. United States Lines Co*. (1972) 7 Cal.3d 488, 492, fn. 1.)

2

funds, they agreed that they would be 50/50 owners. Due to Murray's low credit score, she was not on the loan and was not on title. Flannery reassured her, however, that "we're building all this for the family anyway. . . . . [Y]ou know, we're partners . . . ." After acquiring the Ranch, they ran a horse boarding business on the premises.

In October 2008, the Ranch was severely damaged by a fire. The landscape and trees were devastated, and two barns which could accommodate 40 horses were destroyed. In October 2009, Flannery and Murray filed a lawsuit against the Southern California Gas Company (SCG) (the *SCG* lawsuit) for allegedly failing to maintain the power lines that had sparked the fire. They anticipated recovering about $3 million in damages. Flannery then began taking the position that he was the sole owner of the Ranch and the horse boarding business which they operated at the Ranch.[3]

Flannery and Murray's relationship ended in February 2010, when Murray obtained a restraining order against Flannery.

2. *Pleadings: Murray's complaint and Flannery's cross-complaint.*

In May 2010, three months after the relationship ended, Murray filed this lawsuit against Flannery. The operative complaint included causes of action for breach of a *Marvin* agreement, fraud, and declaratory relief.

The gravamen of Murray's complaint is that the parties agreed that they "were in fact equal partners together in their mutual endeavors," and that "all property acquired belonged to her equally, even if it was titled in [Flannery's] name only." Further, Flannery promised that her name "would be added to the title of the Chatsworth Ranch at some point after escrow closed," and he made the promise "with the intent to defraud and induce [her] to rely upon [it] so that she sold her home in Garden Grove and contributed the proceeds of the sale of her home towards the down payment for the purchase price of the Chatsworth Ranch and paid for the mortgage payments for the Chatsworth Ranch and from in or about August, 2002 to June, 2009, at the request of [Flannery], [she] paid for

---

[3] The *SCG* lawsuit resulted in a sizable settlement in 2013, during the pendency of the instant action.

3

the mortgage payment for [his] Northridge home out of her earnings from her horse boarding business and her other job."

By way of relief, Murray's complaint sought compensatory and punitive damages, a judicial determination that she is the half owner of the Ranch, and a declaration with respect to the ownership of the horse boarding business located at the Ranch and her entitlement to share in any proceeds that might be obtained in the *SCG* lawsuit.

Flannery filed a cross-complaint, alleging, inter alia, a cause of action for conversion of a dog, and a cause of action for conversion of funds from the horse boarding business and its bank account.

3. *Trial and verdict.*

The matter was tried to a jury from November 13 to November 22, 2013.

Flannery's claims against Murray with respect to the conversion of the dog and the conversion of money were eliminated on nonsuit.

The jury returned a special verdict, finding, inter alia, that Murray proved the parties entered into an oral agreement to purchase the Ranch jointly, and that Flannery made a false representation of an important fact to Murray, on which she reasonably relied to her detriment. On both the breach of oral contract claim and the fraud claim, the jury made findings that Murray was a 50 percent owner of the Ranch and a 50 percent owner of the horse boarding business. On the fraud claim, the jury awarded Murray $150,000 in noneconomic damages and $68,000 in punitive damages.

4. *Declaratory relief phase of the proceeding.*

On January 13, 2014, at a trial setting conference in chambers, the trial court addressed Murray's request for declaratory relief with respect to her share of the *SCG* settlement proceeds. Although Flannery had filed a trial brief regarding declaratory relief, the trial court noted that Flannery had offered no additional evidence or witnesses. The trial court announced its tentative decision declaring Murray entitled to 50 percent of the *SCG* settlement proceeds. The trial court indicated it "considered the evidence heard during the course of the trial and adopts the findings of the jury."

4

5. *Judgment and appeal*.

The judgment declares Murray a 50 percent owner of the Ranch, a 50 percent owner of the horse boarding business located at the Ranch, and entitled to 50 percent of the $2,450,000 *SCG* proceeds. It also awards her $150,000 in noneconomic damages and $68,000 in punitive damages.

Flannery filed a timely notice of appeal from the judgment.

## CONTENTIONS

Flannery contends: (1) Murray's cause of action for breach of contract is barred by the statute of frauds; (2) the trial court erred in refusing to instruct on his statute of limitations defenses to the causes of action for breach of contract and fraud; (3) the special verdict forms were erroneous; (4) the trial court erred in permitting the jury to award noneconomic damages on the fraud claim; (5) the trial court erred in not requiring Murray to elect remedies before entry of judgment; (6) the damages were excessive and constituted a double recovery; (7) the trial court erred in issuing the declaratory relief judgment; and (8) the trial court erred in granting nonsuit on his causes of action for conversion of money from a joint bank account and conversion of a dog.

## DISCUSSION

1. *Instructional issues*.

a. *No error shown in refusal to instruct on statute of frauds.*

An agreement "for the sale of real property, or of an interest therein" is subject to the statute of frauds. (Civ. Code, § 1624, subd. (a)(3).) Based thereon, Flannery contends Murray's breach of contract claim is barred as a matter of law because it sought to enforce an oral agreement to convey real property, required to be in writing under the statute of frauds.

The record reflects that Flannery submitted a special jury instruction on the statute of frauds, which was refused. On appeal, Flannery contends the trial court erred in not allowing the jury to decide the affirmative defense of the statute of frauds. The argument is unavailing.

5

"A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case. [Citations.]" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*).)

*Soule* held "GM's proposed instruction was correct in form and substance" (*Soule*, *supra*, 8 Cal.4th at p. 572), and that "GM was therefore entitled to its special instruction." (*Id*. at p. 573.)  In the instant case, the proposed special instruction was not included in the record on appeal.  Therefore, we cannot ascertain whether the proposed instruction was correct in form and substance and should have been given.

Of course, in civil cases, while there ordinarily is no duty to instruct in the absence of a specific request by a party, "the exception is a complete failure to instruct on material issues and controlling legal principles which may amount to reversible error." (*Agarwal v. Johnson* (1979) 25 Cal.3d 932, 951.)  Here, that exception is inapplicable because the statute of frauds is merely an affirmative defense which can be waived. (58 Cal.Jur.3d Specific Performance, § 89.)  Therefore, the trial court had no sua sponte duty to instruct on the statute of frauds.  Consequently, the burden was on Flannery to propose a correct instruction in the trial court with respect to the statute of frauds, and thereafter, to present an adequate record for appellate review.  (*Aguilar v. Avis Rent A Car System, Inc*. (1999) 21 Cal.4th 121, 132.)  Because he did not include in the appellate record a copy of the proposed special instruction on the statute of frauds which was refused, we cannot address whether the trial court's refusal to give said instruction was reversible error.

b.  *No error in refusal to instruct on statute of limitations for breach of oral contract.*

The statute of limitations for a breach of oral contract is two years.  (Code Civ. Proc., § 339.)  Flannery sought an instruction on this statute of limitations defense.  The trial court refused this instruction on the ground that a *Marvin* agreement is breached

6

when one partner terminates the relationship. In ruling on the matter, the trial court noted that the parties' relationship ended in February 2010 and this lawsuit was filed three months later. We conclude the trial court properly found the *Marvin* claim was timely as a matter of law.

A *Marvin*-type claim accrues and the statute of limitation begins to run upon termination of the relationship (*Kurokawa v. Blum* (1988) 199 Cal.App.3d 976, 989; *Whorton v. Dillingham* (1988) 202 Cal.App.3d 447, 456), or it may accrue at a later date, such as if the party charged with the duty of support breaches his or her support obligation after the end of the relationship. (*Cochran v. Cochran* (1997) 56 Cal.App.4th 1115, 1123-1124.)

Here, Flannery acknowledges the parties' relationship ended in February 2010, when Murray obtained a domestic violence restraining order against him. Therefore, the *Marvin* claim asserted in this lawsuit, commenced in May 2010, was timely.

Flannery's theory is that the claim for breach of oral contract accrued much earlier, in January 2003, following the close of the Ranch escrow, when Murray learned she was not on title, and therefore the statute of limitations on her cause of action for breach of oral contract expired in January 2005. Flannery characterizes this dispute as an ordinary civil action for breach of oral contract, rather than a *Marvin* action, because Murray did not sue him for breach of a promise to support her financially.

Flannery's attempt to take this case outside *Marvin* is unpersuasive. He admits the parties had a nonmarital relationship over a period of two decades and that they have three children together. *Marvin* held that unmarried adults who live together are free under general principles of contract law to make agreements concerning their *property* and earnings. (*Marvin*, *supra*, 18 Cal.3d at p. 674.) Given the broad scope of the *Marvin* decision, we reject Flannery's attempt to limit *Marvin* actions to claims for financial support.

In sum, because the parties' relationship ended in February 2010, the trial court properly refused to allow the jury to decide whether the *Marvin* claim was time-barred.

7

c. *Unnecessary to address trial court's refusal to instruct on statute of limitations for fraud.*

Next, Flannery contends the trial court erred in refusing to instruct on the three-year statute of limitations for fraud. (Code Civ. Proc., § 338, subd. (d).) Flannery contends that Murray should have and did discover the alleged fraud in January 2003 when she learned she was not on title, and therefore the cause of action for fraud, filed seven years later, is time-barred.

As discussed in the next portion of the opinion, the jury's award of tort damages must be set aside on other grounds. Therefore, it is unnecessary to address whether the trial court erred in refusing to instruct on the statute of limitations for fraud.

2. *Award of tort damages was duplicative and must be reversed.*[4]

On the fraud claim, the jury awarded Murray $150,000 for past noneconomic loss for physical pain/mental suffering, as well as $68,000 in punitive damages for the fraud. We conclude the $218,000 in tort damages constituted an improper double recovery for the same wrong and must be set aside.

On the special verdict, in the section pertaining to the fraud claim, in addition to awarding damages, the jury made findings that Murray was a 50 percent owner of the Ranch and a 50 percent owner of the horse boarding business. However, the findings determining Murray's ownership interest in the real property and the business cannot be

---

[4] In his opening brief on appeal, Flannery contended "THE DAMAGES AWARDED TO [MURRAY] WERE EXCESSIVE AND VIOLATED THE RULE AGAINST DOUBLE RECOVERY," and that "THE TRIAL COURT ERRED IN NOT REQUIRING [MURRAY] TO ELECT REMEDIES BEFORE ENTRY OF JUDGMENT." Murray's respondent's brief did not address those contentions. Although Flannery, as the appellant, has the burden to establish error, this court is under no obligation to seek out points of law to uphold the judgment. (*In re Janette H*. (1987) 196 Cal.App.3d 1421, 1426.) For example, in *Shoemaker v. County of Los Angeles* (1995) 37 Cal.App.4th 618 (*Shoemaker*), where the respondent's brief failed to respond to several of the points raised in the appellants' opening briefs, the court stated, " 'If an argument is not presented, it will not be considered.' " (*Shoemaker*, *supra*, 37 Cal.App.4th at p. 633, fn. 17, citing *Cox Cable San Diego, Inc. v. City of San Diego* (1987) 188 Cal.App.3d 952, 968.)

construed to be fraud damages.[5]  Thus, Murray was awarded both equitable relief and tort damages for the same wrong.

"  'If a given state of facts entitles one to recover damages *upon the theory of tort*, and the same state of facts entitles him to recover *upon the theory of contract*, it would seem plain that recovery could not be twice had simply because the facts would support recovery upon either theory.' "  (*Shell v. Schmidt* (1954) 126 Cal.App.2d 279, 291, italics added.)  Therefore, "[r]egardless of the nature or number of legal theories advanced by the plaintiff, he is not entitled to more than a single recovery for each distinct item of compensable damage supported by the evidence.  (*Shell v. Schmidt*[, *supra*,] 126 Cal.App.2d 279, 291.)  Double or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited.  (*Ibid*.)"  (*Tavaglione v. Billings* (1993) 4 Cal.4th 1150, 1158-1159.)

Murray's breach of contract theory was that Flannery expressed to her throughout the course of their relationship that they were in fact equal partners together in their mutual endeavors.  Similarly, Murray's fraud theory was that Flannery represented to her that "they would be equal partners and each would have a 50% ownership interest in the Chatsworth Ranch."  Murray fully prevailed on her contract claim, with the result that the trial court fully enforced the *Marvin* agreement.  The trial court essentially granted specific performance of the *Marvin* agreement, awarding Murray 50 percent of the Ranch, 50 percent of the horse boarding business, and 50 percent of the $2,450,000 *SCG* settlement.  Therefore, the judgment's award of $218,000 in tort damages ($150,000 in noneconomic damages and $68,000 in punitive damages) for the same wrong amounted to a double recovery and must be set aside.

---

[5]     The term damages is defined in Civil Code section 3281, which states:  "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault *a compensation therefor in money, which is called damages*." (Italics added.)

9

3. *Declaratory relief issues.*

a. *Trial court had jurisdiction to declare the rights of the parties in the proceeds of the* SCG *settlement.*

Flannery contends the trial court lacked jurisdiction to declare the rights of the parties with respect to a negotiated settlement in another lawsuit before a different trial court (Judge Wiley). The argument fails.

The record reflects that in negotiating the *SCG* settlement, Flannery and Murray were unable to agree as to how the settlement proceeds should be divided between them. Judge Wiley ruled that the "respective ownership interest of [the parties] in the subject property is not directly relevant to their claims of negligence against [SCG]. Litigating the issue of ownership interests of the [parties] in this case is unnecessary, as BC438538 [the instant *Marvin* action] will resolve that dispute."

With the allocation of the settlement proceeds unresolved, SCG filed an interpleader action, to await the determination *in this action* of the parties' respective ownership interests in the Ranch; it was contemplated that once the trier of fact determined the ownership percentages in the real property, those percentages would be applied to the settlement funds. Under these circumstances, Flannery's contention that the trial court in this action lacked jurisdiction to determine the parties' respective interests in the settlement proceeds is meritless.

b. *Trial court erred in denying Flannery's request for statement of decision with respect to the* SCG *settlement proceeds.*

Flannery contends the trial court's refusal to issue a statement of decision for its declaratory relief ruling is reversible error. We agree.

On January 13, 2014, in chambers, with counsel present, the trial court orally announced its tentative decision on Murray's declaratory relief claim and ordered that a judgment be prepared. A request for a statement of decision "must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the

10

request must be made *prior to the submission of the matter for decision*." (Code Civ. Proc., § 632, italics added.)  In declining to issue a statement of decision, the trial court ruled the request was untimely.

In support of the trial court's ruling, Murray contends that because the jury verdict issued on November 21, 2013, Flannery's request for a statement of decision, filed January 21, 2014, more than 10 days after the verdict, was too late.  Flannery, in turn, argues his January 21, 2014 request was timely because it was filed less than 10 days after the trial court announced its tentative decision on January 13, 2014 to award Murray 50 percent of the *SCG* settlement proceeds.

It appears Flannery has the better argument.  The verdict returned by the jury on November 21, 2013 was not a "tentative decision" within the meaning of Code of Civil Procedure section 632 and therefore the verdict did not commence the running of the time period to request a statement of decision.

Further, although the proceeding conducted in chambers on January 13, 2014 was denominated a trial setting conference, it was actually a continuation of the November 2013 *Marvin* trial, rather than a discrete proceeding of less than eight hours duration.  The trial court acknowledged that at the time it entertained the cause of action for declaratory relief concerning the *SCG* settlement proceeds, it "considered the evidence heard during the course of the trial and adopt[ed] the findings of the jury."  Because the January 13, 2014 proceeding was simply the equitable phase of the *Marvin* trial, and was based entirely on the evidence adduced at that trial, Flannery's January 21, 2014 request for a statement of decision was timely.  (Code Civ. Proc., § 632.)

The "trial court's failure to file a statement of decision following a timely request constitutes 'per se reversible error.'  [Citations.]" (*Wallis v. PHL Associates, Inc.* (2013) 220 Cal.App.4th 814, 825.)  The "proper appellate remedy for improper denial of a request for a statement of decision is to reverse and remand for preparation of a statement of decision." (*Id.* at p. 827.)  It shall be so ordered.

11

4. *Nonsuit on Flannery's cross-claims*.

    a. *Standard of appellate review*.

A trial court must not grant a motion for nonsuit if the evidence presented by the plaintiff would support a verdict in the plaintiff's favor. (*Carson v. Facilities Development Co*. (1984) 36 Cal.3d 830, 838 (*Carson*).) In determining whether the plaintiff's evidence is sufficient, the trial court may not weigh the evidence or consider the credibility of witnesses; instead, the evidence most favorable to the plaintiff must be accepted as true and conflicting evidence must be disregarded. (*Ibid*.)

On appeal from a judgment of nonsuit, the reviewing court is guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff. (*Carson*, *supra*, 36 Cal.3d at p. 839.) Although a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, reversal is warranted if there is " 'some substance to plaintiff's evidence upon which reasonable minds could differ . . . .' " (*Ibid*.) Only the grounds specified by the moving party in support of its motion should be considered by the appellate court in reviewing a judgment of nonsuit. (*Ibid*.)

    b. *Conversion of the dog*.

Flannery contends the trial court erred in granting Murray's motion for nonsuit on his cause of action for conversion of a dog.[6]

On the oral motion for nonsuit, Murray's counsel argued, "we introduced evidence that the dog was registered to Ms. Burnett, my client's mother, and [Flannery] produced no evidence of ownership of the dog. The dog was taken out of the pound. Nobody paid for the dog. There's no evidence he owned the dog at any time. So I think it's a failure of the essential element to show ownership of the dog . . . ."

---

[6]     The record reflects the dog, Daniel, was at least 13 years old in 2010. He was blind, deaf and had a bladder problem. It was unsafe for him to live on the Ranch, where a rattlesnake was found in his kennel. He was taken to a shelter and was adopted by another family in June 2010. By that time, Flannery was already restrained from coming onto the property.

12

In response, Flannery's attorney argued "[o]wning is possessing it. He had the right of possession. That's what he testified." Flannery's counsel estimated the value of the dog was $200.

Conversion is the wrongful exercise of dominion over the property of another. (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240.) The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. (*Ibid*.)

Here, Flannery had neither ownership nor possession of the dog. He was not the dog's owner; the evidence showed the dog was registered to Murray's mother. Further, Flannery lacked possession of the dog. The dog lived at the ranch until June 2010, when it was taken to the shelter to be readopted. By that time, Flannery was enjoined from entering the property and therefore he no longer possessed the dog. Accordingly, the trial court properly granted nonsuit on Flannery's claim for conversion of the dog.

### c. *Conversion of money*.

Flannery contends that "despite uncontested evidence that [Murray] misappropriated the sum of $141,517.34 from the parties' joint bank account by transferring it to her personal accounts, the trial court non-suited [his] cause of action for conversion of money." Flannery asserts the evidence showed that between 2002 and 2009, Murray took $141,517.34 more out of the joint bank account than she put in, and that she transferred the money into her personal accounts for her own use. Steven Fishman, a certified public accountant retained by Flannery, testified the $141,517 "represents the difference between the transfers from the plaintiff [Murray], transfers into the joint account from the plaintiff, offset by transfers out to the plaintiff during the period of time. So the transfers in were . . . $635,144, total. [¶] Down at the bottom would be the total expenses/transfers out of $776,000. And if you go to the bottom, the total transfers out exceeded the total transfers in by $141,000."[7]

---

[7] Murray disputes the merits of Flannery's claim. She contends the evidence showed that over the years, she contributed $694,212 to the household and the Ranch,

The record reflects that in moving for nonsuit on Flannery's claim for conversion of money, Murray's counsel argued "you can't convert money. I move for nonsuit on that." The trial court agreed, stating, "you can't convert money, it has to be a tangible good." Flannery's counsel did not present any argument to the contrary.

The grant of nonsuit on this conversion claim was correct because Flannery asserted a generalized claim for money that allegedly was misappropriated over a period of years, rather than a definite sum capable of identification. Under California law, " '[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. [Citation.]' . . . *Fischer v. Machado* (1996) 50 Cal.App.4th 1069, 1072-1074 [sales agent liable for conversion of proceeds from consignment sale of farm products]; *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc*. (1996) 49 Cal.App.4th 472, 485 ['money cannot be the subject of a conversion action unless a specific sum capable of identification is involved.'].) A 'generalized claim for money [is] not actionable as conversion.' (*Vu v. California Commerce Club, Inc*. (1997) 58 Cal.App.4th 229, 235; 5 Witkin, Summary of Cal. Law (10th ed. 2005), Torts, § 703, pp. 1026-1027.)" (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 (*PCO*).)

The tort of conversion "is derived from the common law action of trover. The gravamen of the tort is the defendant's hostile act of dominion or control over a specific chattel to which the plaintiff has the right of immediate possession. (See generally, Rest.2d Torts, § 222A, com. a, p. 431; 1 Dobbs, The Law of Torts (2001), § 59, pp. 121– 122.) That is why money can only be treated as specific property subject to being converted when it is 'identified as a specific thing.' (*Baxter v. King* (1927) 81 Cal.App. 192, 194, 253 P. 172 ['It is true that sometimes money can be treated as specific property, and where identified can form the basis of an action for conversion and might also be the

while Flannery contributed $266,814, so if anything, she has a claim for the differential between her contributions and those made by Flannery.

14

subject of an action for the specific recovery of personal property'].)"  (*PCO*, *supra*, 150 Cal.App.4th at p. 395.)

California cases "permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied *specific funds held for the benefit of others*.  (See, e.g., *Haigler v. Donnelly*, *supra*, 18 Cal.2d at p. 681 [real estate broker]; *Fischer v. Machado*, *supra*, 50 Cal.App.4th at pp. 1072-1074 [sales agent for consigned farm products]; *Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 599 [attorney's claim for $6,750 fee from proceeds of settlement subject to lien]; *Watson v. Stockton Morris Plan Co.* (1939) 34 Cal.App.2d 393, 403 [savings and loan issued duplicate passbook and delivered funds to third party].)  In each of these cases, the amount of money converted was readily ascertainable."  (*PCO*, *supra*, 150 Cal.App.4th at p. 396, italics added.)

In contrast, "actions for the conversion of money have not been permitted when the amount of money involved is not a definite sum.  (*Vu v. California Commerce Club, Inc.*, *supra*, 58 Cal.App.4th at p. 235; *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, *supra*, 49 Cal.App.4th at p. 485 [no conversion where money was allegedly misappropriated 'over time, in various sums, without any indication that it was held in trust for' plaintiff]; . . . .  For example, in *Vu v. California Commerce Club, Inc.*, *supra*, 58 Cal.App.4th 229, the court affirmed a [defense] summary judgment on a conversion claim [brought by] two gamblers who lost 'approximately $1.4 million' and 'approximately $120,000,' respectively, at a specific card club during specified periods of time, due to alleged cheating.  (*Id*. at pp. 231-232.)  The [*Vu*] court held, 'neither by pleading nor responsive proof did plaintiffs identify any specific, identifiable sums that the club took from them.  That rendered the generalized claim for money not actionable as conversion.'  (*Id*. at p. 235.)"  (*PCO*, *supra*, 150 Cal.App.4th at pp. 396-397.)

Here, Flannery's cause of action for conversion alleged, without specificity, that Murray embezzled "funds from the horse boarding business and its bank account and selling and transacting with the Chatsworth Ranch's assets and fixtures" and that he was

15

"harmed in an amount according to proof." The claim for conversion of money was not well pled because it failed to identify a discrete sum that allegedly was converted. Thereafter, at trial, Flannery based his conversion claim on the flow of money into and out of the joint account over a seven-year period, not the misappropriation of specific funds. In view of the above authorities, Flannery's generalized claim for conversion of money that Murray allegedly misappropriated from the joint account over a seven-year period properly was eliminated on nonsuit.[8]

5. *Remaining issues.*

It is unnecessary to address Flannery's remaining arguments with respect to the form of the special verdict or any other issues.

---

[8] Flannery asserts "the misappropriation gives rise to some basis for relief, whether or not it was technically construed as 'conversion,' such as unjust enrichment, which [he pled] in his Cross-Complaint." Flannery's argument that he had some other viable theory does not meet the issue of whether the trial court properly granted nonsuit on his claim for conversion of money. To reiterate, appellate review of the nonsuit ruling is limited to the grounds raised below on the motion for nonsuit. (*Carson*, *supra*, 36 Cal.3d at p. 839.)

## DISPOSITION

The judgment is modified to eliminate the award to Murray of $150,000 in noneconomic damages and $68,000 in punitive damages. The judgment is reversed insofar as it awards Murray 50 percent of the $2,450,000 *SCG* settlement proceeds; the matter is remanded for preparation of a statement of decision in that regard, based on the existing evidence. (*In re Marriage of Ananeh-Firempong* (1990) 219 Cal.App.3d 272, 284-285.) In all other respects, the judgment is affirmed. The parties shall bear their respective costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

JONES, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17