[No. H007615. Sixth Dist. Oct. 21, 1992.]

UNILOGIC, INC., Plaintiff, Cross-defendant and Appellant, v. BURROUGHS CORPORATION, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Clark & Korda, John W. Clark and Ardell Johnson for Plaintiff, Cross-defendant and Appellant.

Brown & Bain, Philip P. Berelson, Patricia M. Lucas and Walter W. O'Haire for Defendant, Cross-complainant and Appellant.

## OPINION

**ELIA, J.**—On appeal, plaintiff Unilogic, Inc., challenges the trial court's allowance of defendant Burroughs Corporation's equitable defense of unclean hands to Unilogic's legal action for conversion and the trial court's submission of the defense to the jury. We conclude that the court properly permitted the defense and did not abuse its discretion in submitting the matter to the jury.

On cross-appeal, Burroughs contends the trial court erred in granting Unilogic's motions for judgment on the pleadings on Burroughs's fraud claim and for nonsuit on Burroughs's claim of misappropriation of trade secrets. We conclude we have no jurisdiction to review the judgment on the pleadings. We affirm the nonsuit.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Unilogic's predecessor, OSM Computer Corporation, proposed a joint development project to Burroughs in the fall of 1984. In November 1985, the parties reached an agreement under which OSM agreed to develop five prototypes of a personal computer (PC) capable of running both MS-DOS, the operating system used in IBM-compatible PC's, and BTOS, a Burroughs proprietary operating system.

Burroughs agreed to contribute $257,000 toward research and development and to provide the services of Burroughs's employee Jay Orcutt to facilitate the project. Burroughs agreed to provide to OSM the BTOS operating system software, both in source code and in object code form. The software was delivered pursuant to a license agreement under which OSM promised to use the software for the purpose of the joint development project only, to return the software to Burroughs when this purpose was served, and to return to Burroughs or to destroy any copies of the software, including any copies that may have been modified in connection with the project.

---

[1] In a previous unpublished opinion, we issued a writ of mandate directing the trial court to vacate its order granting summary judgment to defendants on all of plaintiff's claims and to enter a new order granting summary judgment on some claims. (*Unilogic, Inc.* v. *Superior Court* (Feb. 3, 1989) H004525.) In that opinion, we described the parties' factual allegations in detail. Because the issues raised on the instant cross-appeals are narrow, we set forth in this opinion only a general description of the parties' relationship and of their dispute, providing detail with respect to specific issues.

The joint development project failed. For reasons in dispute, OSM was not entirely successful in developing the new technology and in producing the five prototypes. Burroughs paid $100,000 initially, but nothing more. Thereafter, Burroughs entered a similar venture with Wyse Technology.

In August 1986, Unilogic sued Burroughs and Wyse in a "Complaint for breach of contract, bad faith denial of contract, misrepresentation, interference with contract, conversion, constructive trust, injunctive relief and conspiracy." Burroughs filed a "Cross-complaint . . . for breach of contract, recission [sic] and restitution, bad faith denial of contract, interference with contract, breach of implied covenant of good faith, fraud, conversion, misappropriation of trade secrets, injunctive relief and conspiracy."

As we explained in our previous unpublished opinion in this case, "The gist of Unilogic's complaint is that Burroughs has not paid for Unilogic's development efforts and is wrongfully profiting from them; whereas the gist of Burroughs' cross complaint is that OSM (predecessor in interest of Unilogic) fraudulently misrepresented its condition to Burroughs to induce it to enter into the contract and that it has breached obligations of confidentiality under the equipment and software licenses." (*Unilogic, Inc.* v. *Superior Court, supra,* H004525.)

Following a six-week trial, three of Unilogic's causes of action went to the jury. On Unilogic's fraud claim, the jury found in favor of Burroughs. On Unilogic's wrongful interference claim, the jury found in Unilogic's favor and awarded compensatory damages of $100,000. On Unilogic's conversion claim, the jury found unanimously in Unilogic's favor but awarded no damages based upon a finding in Burroughs's favor, nine votes to three, on its affirmative defense of unclean hands.

As to Burroughs's causes of action, the jury found in Burroughs's favor regarding conversion, breach of the development contract, breach of the license agreement, and breach of an implied duty under the development contract. The jury awarded Burroughs $17,088 in compensatory damages for breach of the development contract, representing the reasonable value of equipment provided, and $1 for breach of the license agreement.

Both Unilogic and Burroughs appeal.

### Unilogic's Appeal

Unilogic alleged, among other things, that Burroughs tortiously converted the new technology developed by Unilogic. Unilogic introduced evidence

that, during development of the technology and at the direction of his superiors at Burroughs, Orcutt spirited proprietary information away from Unilogic. Unilogic maintained that Burroughs never intended to pay the additional $157,000 and that, despite representations to the contrary to Unilogic, Burroughs never intended to place an order with Unilogic for mass production of the new product. Rather, Burroughs intended to allow Unilogic to engage in the effort and expense of developing the new technology and then to convert the technology for its own use and to hire away Unilogic employees. As noted above, the jury found unanimously in Unilogic's favor on its conversion claim.

Burroughs answered Unilogic's conversion claim with an affirmative defense of unclean hands. Burroughs introduced evidence as follows: (1) In order to obtain the Burroughs contract, OSM paid Orcutt a $20,000 bribe and arranged business deals for other companies in which Orcutt was involved. (2) During negotiations between OSM and Burroughs, OSM was having severe financial problems. OSM was losing 50 cents on every dollar of revenue and was in default in payments to its major creditor, Bank of America. In December 1985—shortly after OSM and Burroughs initiated the joint development project—Unilogic was formed to take over OSM's business. Unilogic had virtually the same officers, directors, and employees as OSM and operated in the same facility. Bank of America agreed to foreclose on its security interest in OSM's assets and then to sell the assets to Unilogic at liquidation value. OSM never revealed its tenuous financial situation to Burroughs. (3) Despite promises made in the license agreement between OSM and Burroughs and the testimony of Mark Kaleem, president of OSM and then Unilogic, that Unilogic was bound by that agreement, Unilogic did not return the BTOS software to Burroughs upon termination of the joint development project. (4) Thereafter, Unilogic continued to use the BTOS software to demonstrate the prototype to Burroughs's competitors in an effort to sell Unilogic's PC's. The jury found in Burroughs's favor, nine votes to three, on the unclean hands defense.

 Unilogic argues that the equitable doctrine of unclean hands may not be asserted as an affirmative defense to a legal action for conversion. Unilogic argues alternatively that, if the equitable defense of unclean hands was available here, the trial court erred in submitting the matter to the jury.

*Availability of Unclean Hands Defense*

 Unilogic relies mainly upon a test propounded in *Blain* v. *Doctor's Co.* (1990) 222 Cal.App.3d 1048 [272 Cal.Rptr. 250]. In *Blain*, a doctor

brought a legal malpractice action in which he alleged injuries resulting from his adherence to the defendant attorney's advice to lie at a deposition in a previous medical malpractice action. The defendant attorney asserted an affirmative defense of unclean hands against his former client who, after all, was the deponent who lied. After reviewing the law of unclean hands, the court "glean[ed] from this sparse product that whether there is a bar depends upon the analogous case law, the nature of the misconduct, and the relationship of the misconduct to the claimed injuries." (*Id.* at p. 1060.) As analogous case law, the court looked to two out-of-state cases in which the courts approved the assertion of an unclean hands defense in a legal malpractice action arising out of criminal proceedings. Although not precisely on point, these precedents guided the court to a conclusion that the affirmative defense was available in *Blain* as well.

Apparently finding no cases considering unclean hands as an affirmative defense to conversion, Unilogic cites *Transworld Airlines* v. *American Coupon Exchange* (9th Cir. 1990) 913 F.2d 676 and *Abbott* v. *City of Los Angeles* (1958) 50 Cal.2d 438 [326 P.2d 484] as analogous cases. Unilogic provides no explanation as to why these cases are analogous or useful here; we find them to be neither.

· The issue in *Transworld* was not whether an affirmative defense could be asserted. Clearly it could: the equitable defense of unclean hands was asserted in an effort to avoid the equitable remedy of injunction. The appellate court simply agreed with the trial court that plaintiff's hands were not sufficiently dirty to preclude injunctive relief.

In *Abbott*, the court held that the equitable doctrine of laches was not available as an affirmative defense to a contract action for money damages. We discern no useful analogy between the doctrines of laches and unclean hands—indeed, quite the opposite. The equitable doctrine of laches has a legal equivalent in the statutes of limitations. To allow a laches defense in a legal action would be to override a time limit mandated by the Legislature. But the equitable doctrine of unclean hands has no legal equivalent. Thus, it has been allowed as an affirmative defense in legal actions.

In *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675 [39 Cal.Rptr. 64], for example, plaintiff sought both injunctive relief and damages; defendant asserted an unclean hands defense to both. Plaintiff contended the defense was not available as against the claim for damages. The *Fibreboard* court noted that the precise issue was one of first impression in California, although "[i]n *Morrison* v. *Willhoit* [1944] 62 Cal.App.2d 830, 838 [145 P.2d 707] . . . , it was held that the

fact that a complaint presents only a legal demand does not prevent the application of equitable principles to the case." (*Id.* at p. 728.) The *Fibreboard* court concluded: "We are satisfied that the equitable defense of unclean hands is available in this state as a defense to a legal action. We are persuaded to this conclusion, moreover, because in California, a defendant may set up as many defenses as he may have, regardless of the question as to whether they are of a legal or equitable nature, because the distinction which exists under the common law between actions at law and suits in equity, and the forms thereof, have been abolished. [Citation.]" (*Id.* at p. 728.)

The *Fibreboard* court went on to caution, however, that "[t]he misconduct which brings the clean hands doctrine into operation must relate directly to the transaction concerning which the complaint is made, i.e., it must pertain to the very subject matter involved and affect the equitable relations between the litigants." (227 Cal.App.2d at p. 728.) This requirement was later reflected in the third prong of the *Blain* test—"the relationship of the misconduct to the claimed injuries." (*Blain* v. *Doctor's Co.*, *supra*, 222 Cal.App.3d at p. 1060.)

Like the *Blain* court, we find scant authority on the subject, but we note that *Fibreboard* has been cited with approval for the general proposition that "[t]he unclean hands doctrine is not confined to equitable actions, but is also available in legal actions." (*Goldstein* v. *Lees* (1975) 46 Cal.App.3d 614, 618, fn. 2 [120 Cal.Rptr. 253]; see also *Pond* v. *Insurance Co. of North America* (1984) 151 Cal.App.3d 280, 290 [198 Cal.Rptr. 517]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 8, p. 685 [noting that "[t]here is little authority on the point . . ."]; 30 Cal.Jur.3d, Equity, § 26, p. 516.) And Unilogic has not provided us with any reason, based on policy or otherwise, for holding that the unclean hands defense is never available in a legal action for conversion. We decline to so hold and proceed to the other two prongs of the *Blain* test.

As to the nature of the misconduct alleged by Burroughs, clearly the various claims of unclean hands asserted by Burroughs, if found by the jury to be true, were sufficient to support the affirmative defense. (See *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists*, *supra*, 227 Cal.App.2d at p. 727 ["application of the doctrine [of unclean hands] raises primarily a question of fact"]; accord *California Satellite Systems, Inc.* v. *Nichols* (1985) 170 Cal.App.3d 56, 70 [216 Cal.Rptr. 180].) Indeed, Unilogic's retention of the BTOS software served as the basis not only for Burroughs's unclean hands defense but also for Burroughs's conversion claim. Because the jury found in Burroughs's favor on the conversion claim, it is likely that nine jurors viewed Unilogic's conversion as sufficient to support

Burroughs's unclean hands defense as well. We see nothing wrong in that conclusion.

Finally, we must examine the relationship of the misconduct to the claimed injuries. Unilogic argues that its conversion claim—regarding Orcutt's delivery of proprietary information to Burroughs—is unrelated to Burroughs's unclean hands claims—based upon Unilogic's payment of a bribe to Orcutt, its failure to disclose its financial difficulties, its failure to return the BTOS software, and its subsequent use of the software through demonstration of a prototype.

Unilogic takes an unreasonably narrow view of the unclean hands doctrine. ■ Certainly, there must be a connection between the complaint and the equitable defense: "The trial of the issue relating to clean hands cannot be distorted into a proceeding to try the general morals of the parties." (*Boericke* v. *Weise* (1945) 68 Cal.App.2d 407, 419 [156 P.2d 781].) "A person is not placed forever entirely outside the protection of the law in a particular transaction, because, forsooth, some time in the distant past he was guilty of an improper act." (*Nealis* v. *Carlson* (1950) 98 Cal.App.2d 65, 69 [219 P.2d 56].) But the doctrine does apply "if the inequitable conduct occurred in a transaction directly related to the matter before the court and affects the equitable relationship between the litigants. [Citations.]" (*California Satellite Systems, Inc.* v. *Nichols, supra,* 170 Cal.App.3d at p. 70.) In short, "[t]he misconduct must infect the cause of action before the court." (*Carman* v. *Athearn* (1947) 77 Cal.App.2d 585, 598 [175 P.2d 926].)

■ In this case, Burroughs's conversion and Unilogic's misconduct occurred in the same transaction that forms the subject of this litigation—the joint development project. In our view, that is enough to trigger application of the unclean hands doctrine.

*Submission of Unclean Hands Defense to Jury*

■ Unilogic cites authority for the indisputable proposition that, generally, legal claims are tried to a jury, when a jury is properly requested, while equitable claims are tried to a court. Unilogic relies upon *C & K Engineering Contractors* v. *Amber Steel Co.* (1978) 23 Cal.3d 1, 8 [151 Cal.Rptr. 323, 587 P.2d 1136], and its progeny, *A-C Co.* v. *Security Pacific Nat. Bank* (1985) 173 Cal.App.3d 462, 472 [219 Cal.Rptr. 62], for the principle that the right to jury trial guaranteed by the California Constitution (Cal. Const., art. I, § 16) is the right as it existed at common law when the Constitution was adopted in 1850. Because Unilogic has found no authority for the right to jury trial on an equitable claim such as unclean hands as of

1850, Unilogic concludes that the trial court erred in submitting the issue to the jury. We disagree.

In *C & K Engineering Contractors*, the court stressed that the critical factor in determining the right to jury trial is the essential nature of the action. " ' "In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law." ' [Citation.] On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial. [Citations.]" (*C & K Engineering Contractors* v. *Amber Steel Co.*, *supra*, 23 Cal.3d at p. 9.) In both that case and *A-C Co.*, the courts held that there was no right to jury trial because, although plaintiffs sought damages for breach of contract, their only avenue to relief was the equitable doctrine of promissory estoppel. Therefore, the gist of those actions was equitable, not legal.

The gist of Unilogic's action for conversion was legal. Burroughs simply asserted an affirmative defense of unclean hands. As the court observed in *Ford* v. *Superior Court* (1959) 176 Cal.App.2d 754 [1 Cal.Rptr. 559], in which defendants asserted seven affirmative equitable defenses, including unclean hands, to an action at law for breach of contract: "The assertion of such defenses in a law action will not change it to an action in equity or warrant separate and prior trial by the court." (*Id.* at p. 759.)

Moreover, the trial court has discretion whether to submit an equitable defense to the jury. In *Weber* v. *Marshall* (1861) 19 Cal. 447, defendant asserted an equitable claim for specific performance against a legal claim for ejectment. The Supreme Court ruled: "The parties are entitled to a trial by jury upon the legal issues; but the Court, sitting to administer equitable relief, either by way of defense to an action of ejectment, or affirmatively, sits as a chancellor, and in the exercise of equitable powers, may or may not order an issue or issues to a jury in its discretion; but in a great majority of cases the Judge can as well pass upon the facts as a jury, and may do so with a great deal less delay and expense. It is only when the evidence is very contradictory, and the question turns on the relative credibility of witnesses, or in such exceptional instances that the chancellor calls in the aid of a jury to assist him in sifting and ascertaining the facts." (*Id.* at pp. 457-458; see also 41 Cal.Jur.3d, Jury, § 8, pp. 31-32 [recognizing a conflict as to the right to jury trial on legal issues when both legal and equitable relief is sought, but concluding that, "under the sounder and better reasoned view, whenever an

action involves both legal and equitable issues the legal issues should be tried by a jury, unless a jury trial is waived, but *a jury trial of the equitable issues is within the court's discretion*" (fns. omitted, italics added)]; 1 Cal. Forms Jury Inst., § 7.30, p. 7-42.1 ["In a legal action, the issue of unclean hands may be presented to the jury either by stipulation or because it is so intertwined with legal claims that it cannot be separately tried to the judge. It has been said that 'the application of the doctrine [of unclean hands] is primarily a question of fact' that is within the discretion of the trial court upon an application for an injunction. In a legal action, such a question of fact might properly be presented to the jury." (Fns. omitted.)].)

In this case, it was particularly prudent for the trial judge to exercise his discretion to submit Burroughs's unclean hands defense to the jury. The jury was already deciding Burroughs's claim that Unilogic improperly retained the BTOS software within the context of Burroughs's cause of action for conversion. Moreover, all of Burroughs's theories in support of the unclean hands defense were intertwined with the parties' legal causes of action and raised questions of fact and credibility properly submitted to a jury.

To summarize our disposition of Unilogic's appeal, we conclude that the equitable defense of unclean hands was available against the legal claim for conversion and that the trial court did not err in submitting the equitable defense to the jury.

### Burroughs's Appeal

Burroughs contends the trial court erred in granting Unilogic's motion for judgment on the pleadings on Burroughs's fraud claim. Burroughs also contends the trial court erred in granting Unilogic's motion for nonsuit on Burroughs's claim for misappropriation of trade secrets. Unilogic addresses the merits of these issues and argues additionally that we lack jurisdiction to review Burroughs's appeal from judgment on the pleadings on its fraud claim because Burroughs's notice of cross-appeal did not mention that issue.

### Judgment on the Pleadings on Fraud Claim

Burroughs's notice of cross-appeal reads in pertinent part: ". . . Burroughs Corporation cross-appeals from the Judgment on the Eleventh Cause of Action of the Cross-complaint entered on September 10, 1990, and from the Judgment on the Tenth Cause of Action of the Cross-complaint entered on October 9, 1990."

In its 11th cause of action, Burroughs sought injunctive relief to prevent Unilogic from disclosing Burroughs's trade secrets, from using equipment or

confidential information belonging to Burroughs, and from interfering with Burroughs's contractual rights. In its order entered September 10, 1990, the trial court entered judgment in Unilogic's favor on Burroughs's 11th cause of action. Although the notice of cross-appeal indicated that Burroughs sought review of the ruling, Burroughs has not briefed it and has, therefore, waived it.[2]

In its 10th cause of action, Burroughs alleged that Unilogic had willfully and maliciously misappropriated Burroughs's trade secrets—specifically, the source code listings for the BTOS operating system software. In its order entered October 9, 1990, the trial court entered judgment of dismissal on Burroughs's 10th cause of action based upon the granting of Unilogic's motion for nonsuit on that cause of action during trial. The notice of cross-appeal specifically mentioned the judgment on the nonsuit on Burroughs's 10th cause of action, and Burroughs has briefed the issue on appeal. We discuss the issue in the next section of this opinion.

In its eighth cause of action, Burroughs alleged that Unilogic engaged in fraud by representing that Unilogic had financial strength and resources sufficient to carry out the joint development project, that Burroughs relied upon the misrepresentations, and that Burroughs was damaged thereby. The trial court granted Unilogic's motion for judgment on the pleadings on Burroughs's eighth cause of action and entered judgment thereon in its October 9, 1990, order. Burroughs's notice of cross-appeal did not specifically mention the judgment on the pleadings on the eighth cause of action, but Burroughs has briefed it for our review.

■ Unilogic contends we are without jurisdiction to review the trial court's disposition of the eighth cause of action because the notice of cross-appeal did not expressly list it as a basis for appeal. Burroughs responds that the notice perfected an appeal on the eighth cause of action because it specifically listed the October 9, 1990, judgment. Burroughs urges our application of California Rules of Court, rule 1(a), providing that "[a] notice of appeal shall be liberally construed in favor of its sufficiency" and our recognition of "[t]he strong public policy in favor of hearing appeals on the merits [which] operates against depriving an aggrieved party or attorney of a right of appeal because of noncompliance with technical requirements" (*Moyal* v. *Lanphear* (1989) 208 Cal.App.3d 491, 497 [256 Cal.Rptr. 296]).

---

[2]In its reply brief on the cross-appeal, Burroughs contends it did challenge the denial of injunctive relief under the 11th cause of action in its opening brief. We disagree. We do not view as adequate to preserve an issue on appeal one obscure textual reference to the 11th cause of action and one footnote mention of the 11th cause of action, both within the context of Burroughs's argument regarding nonsuit on the 10th cause of action.

Case law plainly supports Unilogic's position. The Supreme Court set forth the rule 60 years ago in *Glassco* v. *El Sereno Country Club, Inc.* (1932) 217 Cal. 90, 91-92 [17 P.2d 703]: "that portion of the judgment denying the appellants a lien, and which is attacked by the plaintiffs in their brief herein, is not properly a subject of review upon this appeal because of the insufficiency of the notice of appeal. The notice states that the appeal is 'from so much of the judgment herein as denies relief to the plaintiffs against the said defendant, Clotilde G. Castruccio . . . .' The notice of appeal makes no mention of that separate and distinct portion of the judgment denying plaintiffs a lien. It is elementary that an appeal from a portion of a judgment brings up for review only that portion designated in the notice of appeal. [Citation.] While it is true that notices of appeal are to be liberally construed with a view to hearing causes on their merits [citation], we are of the opinion that the notice filed in the present case does not present 'a mere misdescription' of the judgment, calling for the application of said rule, but rather . . . that portion of the judgment appealed from is so clear and unmistakable as to preclude a description of that portion of the judgment denying appellants a lien."

The Court of Appeal followed this rule prior to the Supreme Court's decision in *Glassco* (see, e.g., *Dimity* v. *Dixon* (1925) 74 Cal.App. 714, 718 [241 P. 905]) and continues to do so today (see, e.g., *City of Long Beach* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1114, 1118, fn. 7 [225 Cal.Rptr. 227]). In *Norman I. Krug Real Estate Investments, Inc.* v. *Praszker* (1990) 220 Cal.App.3d 35, 47 [269 Cal.Rptr. 228], the court observed: "The rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only part of the judgment or one of two separate appealable judgments or orders. (9 Witkin, Cal. Procedure (3d ed. 1985), Appeal, § 372, p. 374.)"

In this case, Burroughs's notice of cross-appeal is not in the least ambiguous. It specifically states an intention to appeal "from the Judgment on the Tenth Cause of Action of the Cross-complaint entered on October 9, 1990." It mentions or implies nothing regarding the judgment on the eighth cause of action of the cross-complaint entered on October 9, 1990. The portion of the judgment appealed from is, in the words of the Supreme Court, "clear and unmistakable . . . ." As a result, we are without authority to liberally construe the notice of cross-appeal, and we lack jurisdiction to review the judgment on the pleadings on Burroughs's eighth cause of action.

*Nonsuit on Misappropriation of Trade Secrets Claim*

Burroughs cross-complained for misappropriation of trade secrets, based upon Unilogic's retention and use of the BTOS software after termination of

the joint development project. Burroughs established Unilogic's misappropriation through the testimony of Mark Kaleem that Unilogic had commingled BTOS with Unilogic software and had demonstrated a prototype using the commingled software after termination of the project.

Civil Code section 3426.3 provides several measures of damages upon proof of misappropriation of trade secrets: "(a) A complainant may recover damages for the *actual loss* caused by misappropriation. A complainant also may recover for the *unjust enrichment* caused by misappropriation that is not taken into account in computing damages for actual loss. [¶] (b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a *reasonable royalty* for no longer than the period of time the use could have been prohibited. . . ." (Italics added.)

■ In this case, Burroughs conceded it had not suffered "actual loss" within the meaning of Civil Code section 3426.3 because Unilogic never sold the hybrid system developed in the project. But Burroughs contended it was entitled either to damages for "unjust enrichment" or to a "reasonable royalty" for Unilogic's retention and use of the proprietary information.

As proof of damages, Burroughs introduced evidence that BTOS was an enhanced version of CTOS, a software owned by Convergent Technologies. Abner Still, Burroughs's former director of OEM (original equipment manufacturer) procurement, testified that, in 1985, Burroughs paid a royalty of $1.3 million to Convergent for CTOS, acquiring a broad license to modify CTOS and to sublicense the modified software, BTOS. Still also testified that, in 1985, the value of a paid-up license to use BTOS object code was $1.2 million and the value of a paid-up license to use BTOS source code was $100,000. The BTOS values thus were based upon and equalled the royalty Burroughs paid Convergent for CTOS.

The trial court granted Unilogic's motion for nonsuit on Burroughs's misappropriation of trade secrets claim. (See Code Civ. Proc., § 581c.) While acknowledging that he was "not granting [nonsuit] with a whole lot of confidence . . . ," the trial judge concluded "that the defendants have not offered any evidence upon which a jury could find unjust enrichment. That is, some monetary benefit to the plaintiff, and I am not in this context necessarily thinking about the fact that the plaintiff is out of business, but I am trying to focus on the defendant's evidence without ignoring all the rest of the evidence in the case to find how Mr. Still's opinion as an owner could constitute evidence of unjust enrichment. And I just, I am not able to do that. [¶] But on this very narrow grounds, and we will let the chips fall where they may, the motion is granted."

Burroughs contends the court erred because (1) under the liberal standards applicable to a motion for nonsuit, there was sufficient evidence of unjust enrichment, or (2) even if there was insufficient evidence of unjust enrichment, the trial court should have allowed the jury to determine liability for trade misappropriation as a precursor to the court's determination of a reasonable royalty under Civil Code section 3426.3, subdivision (b), or an injunction under Civil Code section 3426.2.

■ "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor." ' [Citation.] A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' [Citation.] [¶] ■ In reviewing a grant of nonsuit, [an appellate court is] 'guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff.' [Citation.] We will not sustain the judgment ' "unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." ' [Citation.]" (*Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948].)

■ We conclude that the trial court did not err in granting Unilogic's motion for nonsuit on Burroughs's misappropriation of trade secrets claim. Even assuming the truth of Still's testimony regarding the 1985 values of CTOS and BTOS, we must agree with the trial court that Burroughs did not present evidence of damages specific to the dispute at hand and relevant to the measures of damages under Civil Code section 3426.3.

■ "In general, '[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.' (Rest., Restitution, § 1.)" (*Nibbi Brothers, Inc.* v. *Home Federal Sav. & Loan Assn.* (1988) 205 Cal.App.3d 1415, 1422 [253 Cal.Rptr. 289].) "Ordinarily the benefit to the one and the loss to the other are co-extensive, and the result . . . is to compel the one to surrender the benefit which he has received and thereby to make restitution to the other for the loss which he has suffered." (Rest., Restitution, § 1, com. d, p. 13; see also 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 95, p. 125.)

■ Contrary to the norm, the benefit and loss in this case are not necessarily coextensive. At the same time that Unilogic retained the BTOS software, Burroughs also had full use of the BTOS and CTOS software incorporated therein. Thus, this is not a case in which one party is deprived of precisely what the other party gains and, more importantly, it is not a case in which the value of one party's loss necessarily equals the value of the other party's gain.

■ "In other situations, a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss, but nevertheless the enrichment of the defendant would be unjust. In such cases, the defendant may be under a duty to give to the plaintiff the amount by which he has been enriched." (Rest., Restitution, § 1, com. e, p. 14.) And in the case of a tortfeasor, a benefit will be presumed although the entire transaction, in fact, may not be beneficial to the tortfeasor. (Rest., Restitution, § 128, com. f, pp. 530-531; see also 1 Witkin, Summary of Cal. Law, *supra*, § 96, p. 126.)

■ In this case, the amount of restitution based upon an unjust enrichment theory depends upon the degree to which Unilogic was enriched by retention and use of Burroughs's proprietary information. And that enrichment, if any, is not necessarily equivalent to Burroughs's loss, if any. While Still's testimony may have served as a starting point, neither his valuations nor any other evidence introduced by Burroughs directly addressed the degree to which Unilogic was enriched. There was no point in submitting the liability issue to the jury when there was no basis for a determination of damages.

Nor was it necessary to submit the liability issue to the jury in order to allow the trial court thereafter to determine a reasonable royalty or to impose an injunction. Just as Burroughs presented no evidence of the degree of Unilogic's enrichment, Burroughs likewise presented no evidence that would allow the court to determine what royalty, if any, would be reasonable under the circumstances. And the court was obviously not willing to grant injunctive relief, regardless of the jury's decision on liability. As noted above, the court had already denied injunctive relief under Burroughs's 11th cause of action, based in part on Burroughs's unclean hands. Burroughs has not briefed that ruling on appeal and has not explained why a request for injunctive relief under its 10th cause of action for misappropriation of trade secrets would have fared better or why a denial of such relief would have constituted error.

To summarize our disposition of Burroughs's cross-appeal, we conclude that we lack jurisdiction to review the judgment on the pleadings on Burroughs's fraud claim and that the trial court did not err in granting Unilogic's

motion for nonsuit on Burroughs's claim for misappropriation of trade secrets.

## DISPOSITION

The judgment is affirmed as to both appeals. Each party shall bear its own costs on appeal.

Capaccioli, Acting P. J., and Premo, J., concurred.

The petition of appellant Unilogic, Inc., for review by the Supreme Court was denied January 14, 1993. Mosk, J., was of the opinion that the petition should be granted.