[No. B097156. Second Dist., Div. Five. July 14, 1997.]

PATRICIA ANN COCHRAN, Plaintiff and Appellant, v. JOHNNIE L. COCHRAN, JR., Defendant and Respondent.

**[Opinion certified for partial publication.‡]**

‡Sections 2. and 3. of Discussion (and appropriate fns.) of this opinion are not certified for publication. (See Cal. Rules of Court, rules 976(b) and 976.1.)

COUNSEL

Tanke & Willemsen, Gary L. Simms and Tony J. Tanke for Plaintiff and Appellant.

Fogel, Feldman, Ostrov, Ringler & Klevens, Larry R. Feldman and Leighanne Lake for Defendant and Respondent.

OPINION

GODOY PEREZ, J.—Plaintiff Patricia Ann Cochran appeals from the order dismissing her complaint against Johnnie L. Cochran, Jr., after his demurrers were sustained by the trial court. For the reasons set forth below, we reverse in part and remand for further proceedings.

FACTS AND PROCEDURAL HISTORY

Plaintiff and appellant Patricia Ann Cochran (appellant) sued defendant and respondent Johnnie L. Cochran, Jr. (respondent) in March 1995 for breach of an alleged 1983 *Marvin*[1] agreement for her lifetime support. Respondent does not dispute that appellant properly alleged the elements of such an agreement and the main issue on appeal is whether appellant's cause

[1]*Marvin* v. *Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106].

of action for breach of the 1983 agreement is barred by the statute of limitations.[2]

Appellant's operative first amended complaint alleged that she and respondent began a romantic relationship in the mid-1960's during which they had a child together and, though unmarried, lived together as husband and wife for many years. She legally changed her surname to match respondent's. During this time, respondent allegedly promised that property acquired during the relationship belonged to him and appellant equally and promised appellant lifetime support.[3] In October 1983, appellant and respondent entered an agreement which settled their rights as to property acquired up to that point. At the same time, respondent again promised to support appellant for the rest of her life. In 1984, appellant ratified his agreement to share equally all property acquired during the relationship.

They lived together until 1986, when respondent told appellant he had married another woman. Even though respondent moved out to live with his wife, he continued to support appellant financially until February 1995. Respondent continued his relationship with appellant and during those years, through both words and conduct, ratified or renewed his promises regarding support and property acquisition. Appellant quit her job in 1991 at appellant's request, based on his promise of continued support.

Appellant's complaint was filed one month after respondent allegedly stopped supporting her. The first amended complaint included seven causes of action: (1) breach of contract; (2) and (3) for a constructive trust on properties acquired after the 1983 settlement agreement; (4) for declaratory relief; (5) for fraud, on the ground that respondent's promises were made without the intent to perform; (6) for intentional infliction of emotional distress; and (7) for negligent infliction of emotional distress.

Respondent demurred, contending that any breach of the alleged 1983 *Marvin* agreement occurred when he married and moved out in 1986, with

[2]Respondent does contend that appellant could not properly allege the existence of a new or renewed *Marvin* agreement after he married in 1986 since any such agreement would be against public policy. Because we hold, *post*, that appellant's claim based on the 1983 *Marvin* contract is not time-barred, we need not reach that issue or appellant's newly asserted theories of promissory estoppel or estoppel to plead the statute of limitations as a defense.

[3]These allegations were set forth in more intimate detail but were ordered stricken by the trial court as "tabloid style" pleadings. Appellant has not challenged that order, but both appellant and respondent have relied on parts of those allegations to support their arguments. While we have not considered any of the stricken allegations in reaching our decision, where necessary we have stated them in a condensed and sanitized version either to give context to the remaining allegations of the first amended complaint or to take note of the parties' arguments. As always when considering an order sustaining a demurrer, we must assume that the facts pleaded are true. This does not mean that they are and we express no opinion on the merits of the case.

the statute of limitations therefore barring any claims based on that agreement. Any agreements made after 1986 were against public policy and therefore unenforceable because he was married to another and no longer living with appellant.[4] Respondent also moved to strike numerous portions of the first amended complaint, in part on the ground that they were not relevant.

On June 8, 1995, the court sustained without leave to amend the demurrers to the first, third, fifth and seventh causes of action on the ground that they accrued when respondent married and moved out in 1986 and were therefore barred by the statute of limitations. The demurrer to appellant's second cause of action for constructive trust was sustained with leave to amend, so that appellant could make more specific allegations concerning any property which she contended was jointly acquired between the signing of the 1983 property settlement and respondent's 1986 marriage. The demurrer to the fourth cause of action for declaratory relief was sustained with leave to amend, but only to the extent appellant could plead more specifically in regard to the second cause of action. The demurrer to the sixth cause of action was also sustained with leave to amend so appellant could plead more specific facts which did not relate to her alleged breach of a *Marvin* agreement. The motion to strike was granted without leave to amend as to numerous paragraphs of the first amended complaint.

Appellant did not amend her complaint. On appeal, she has expressly abandoned the second, third and seventh causes of action. She has also raised no issues concerning the alleged agreement to share equally in property acquired by the parties and we deem her property claims waived. (*Unilogic, Inc.* v. *Burroughs Corp.* (1992) 10 Cal.App.4th 612, 624 [12 Cal.Rptr.2d 741].) The only issues on appeal concern the alleged agreement for lifetime support as it relates to appellant's first cause of action for breach of contract, fourth cause of action for declaratory relief, fifth cause of action for fraud and sixth cause of action for intentional infliction of emotional distress.

### STANDARD OF REVIEW

■ In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiff-appellant. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Regardless of the label attached to the cause of action, we must examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory.

---

[4] See footnote 2, *ante.*

(*Saunders* v. *Cariss* (1990) 224 Cal.App.3d 905, 908 [274 Cal.Rptr. 186].) Reversible error is committed if the facts alleged show entitlement to relief under any possible legal theory. (*Platt* v. *Coldwell Banker Residential Real Estate Services* (1990) 217 Cal.App.3d 1439, 1444 [266 Cal.Rptr. 601].)

We will not, however, assume the truth of contentions, deductions or conclusions of fact or law (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th 903]), and may disregard allegations that are contrary to the law or to a fact of which judicial notice may be taken. (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].) When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper. (Code Civ. Proc., § 430.30, subd. (a); *Baillargeon* v. *Department of Water & Power* (1977) 69 Cal.App.3d 670, 675 [138 Cal.Rptr. 338].) We may take judicial notice of the records of a California court. (Evid. Code, § 452, subd. (d).) We must take judicial notice of this state's decisional and statutory law. (Evid. Code, § 451, subd. (a).)

## DISCUSSION

### 1. Statute of Limitations for "Marvin" Claims

■ The *Marvin* court, clarifying and expanding on earlier decisions, held that unmarried adults who live together are free under general principles of contract law to make agreements concerning their property and earnings. This includes express or implied contracts by one party to support the other or to share equally in all property which they acquired. (*Marvin* v. *Marvin*, *supra*, 18 Cal.3d at pp. 665, 670-671, 674-675, 684.) *Marvin* actions based on an express oral agreement are governed by the two-year statute of limitations applicable to nonwritten contracts. (Code Civ. Proc., § 339, subd. 1; *Kurokawa* v. *Blum* (1988) 199 Cal.App.3d 976, 989 [245 Cal.Rptr. 463], hereafter *Kurokawa*.)

A cause of action for breach of contract accrues at the time of breach, which then starts the limitations period running. (*Whorton* v. *Dillingham* (1988) 202 Cal.App.3d 447, 456 [248 Cal.Rptr. 405], hereafter *Whorton*.) ■ Respondent contends, and the trial court agreed, that the alleged *Marvin* agreement was breached in 1986, when respondent moved out and married another woman. It seems logical, however, that if respondent agreed to support appellant for life, then did so for nine years after leaving her to marry another, he did not breach his contract until his support payments stopped. Respondent's reliance on seemingly applicable precedent is misplaced.

His thesis rests on *Estate of Fincher* (1981) 119 Cal.App.3d 343 [174 Cal.Rptr. 18] (hereafter *Fincher*), and the few decisions which have cited it. The *Fincher* court held that a woman's cause of action for breach of a *Marvin* agreement accrued when the relationship ended. (*Id.* at p. 352.) The *Whorton* and *Kurokawa* courts relied on *Fincher* and also held that a cause of action accrues and the statute of limitations begins to run when one partner ends the relationship. (*Whorton, supra,* 202 Cal.App.3d at p. 456 ["A *Marvin*-type contract is breached when one partner terminates the relationship."]; *Kurokawa, supra,* 199 Cal.App.3d at p. 989 ["[W]hen the parties separated . . . , any cause of action . . . based upon a [*Marvin*] theory of contract . . . accrued at that point."].)

■ When viewed in isolation, this language seems to support the trial court's ruling. As *Harris* v. *Superior Court* (1992) 3 Cal.App.4th 661 [4 Cal.Rptr.2d 564], makes clear, however, the language of an opinion must be construed in light of the facts of the particular case, an opinion's authority is no broader than its factual setting and the parties cannot rely on a rule announced in a factually dissimilar case. (*Id.* at pp. 665-666.) Parties and counsel were warned to take care that they do not take a passage out of context and analyze it " '. . . as a Shakespeare scholar would, or as though it were a verse from Holy Writ, discovering hidden meanings, innuendoes, and subtleties never intended.' [Citation.]" (*Id.* at p. 666.)

Viewed from this perspective, the inapplicability of *Fincher, Kurokawa* and *Whorton* becomes apparent. The plaintiff in *Fincher* lived with Fincher from 1964 through 1971, then left him to marry someone else. The plaintiff eventually left her first husband and resumed her relationship with Fincher in November 1975. They married in March 1976 and Fincher died in 1978. When Fincher omitted plaintiff from his will, she sued the estate, claiming that she was entitled to half of Fincher's property pursuant to oral *Marvin* agreements which existed when they lived together from 1964 to 1971 and between November 1975 and their March 1976 marriage. The jury found that a *Marvin*-type agreement had existed, with the parties agreeing that any assets or liabilities which they acquired would be equally divided. The trial court took the statute of limitations defense away from the jury, however, and held that any cause of action based on the 1964-1971 *Marvin* agreement was time-barred.

The plaintiff testified that when she left Fincher in 1971, she made no claim to split their property because she "just didn't think about it. I told him I was going to start my life again." Focusing on this language, the appellate court affirmed the trial court's statute of limitations ruling: "When Barbara walked out on Jim in July 1971 to 'start a new life,' any cause of action she

may have had to establish her right to one-half of the property accumulated by the parties during the period from May 1964 to July 1971 commenced at that time. Clearly the limitations period had run by the time she first asserted her claim in August 1978." (*Fincher, supra,* 119 Cal.App.3d at pp. 352-353.)

The plaintiff in *Whorton* lived with his lover for nearly seven years, until the defendant barred plaintiff from their residence. Plaintiff sued, alleging a *Marvin* agreement under which the defendant agreed to support him for life and divide equally all property which the defendant acquired during their relationship. The trial court sustained without leave to amend defendant's demurrer on several grounds, including the statute of limitations. The Court of Appeal reversed, citing *Fincher* for the proposition that a *Marvin* contract is breached "when one partner terminates the relationship." Because the complaint alleged that the breach occurred in late 1984, the June 1986 complaint was timely, the court held. (*Whorton, supra,* 202 Cal.App.3d at pp. 456-457.)

The plaintiff in *Kurokawa* alleged a *Marvin*-type agreement for support and property acquisition with Beaumont.[5] She alleged that their relationship ended in 1981 and filed her complaint in May 1983. Beaumont obtained summary judgment on the ground that Kurokawa's claims were barred by the two-year statute of limitations. Plaintiff's evidentiary showing in opposition to the summary judgment motion consisted of her own declaration, stating that she and Beaumont lived together from 1965 to 1971. In January 1971, she said Beaumont separated from her, gave her some cash and a diamond ring, and promised to pay her $500,000 if they were unable to reconcile. She was deported in late 1971 and returned to California in June 1972. Between 1971 and 1982, she claimed Beaumont promised on numerous occasions to take care of her and pay the money he owed her.

None of those postseparation promises were sufficient to revive Beaumont's oral *Marvin* agreement, the court held. (*Kurokawa, supra,* 199 Cal.App.3d at p. 990.) "Thus, when the parties separated in 1971, any cause of action Kurokawa may have had to establish any right based upon a theory of contract to a portion of the property accumulated during her relationship with Beaumont accrued at that point." (*Id.* at p. 989, citing *Fincher, supra,* 119 Cal.App.3d at p. 352.)

Implicit in these three decisions is nonperformance of a *Marvin* agreement—a breach—which coincided with the end of the parties' relationship. As the *Fincher* court noted, after plaintiff left her boyfriend in 1971, the

---

[5]Beaumont died while the action was pending and Blum, the co-executor of his estate, was later named as a defendant.

boyfriend exercised exclusive control over his only known properties—two corporations. (*Fincher, supra,* 119 Cal.App.3d at pp. 352-353.) The plaintiff made no claim to the property they had acquired during the life of their *Marvin* agreement until several years later. The plaintiff in *Kurokawa* conceded that she and the defendant separated in 1971. She offered no evidence that he supported her, gave plaintiff her share of any property, or otherwise performed under the alleged *Marvin*—agreement after that time. The plaintiff in *Whorton* was barred from the premises in 1984 and alleged that the breach occurred " 'on or about the latter part of 1984.' " (*Whorton, supra,* 202 Cal.App.3d at pp. 451, 456.)

In short, neither *Fincher, Whorton* nor *Kurokawa* considered when or whether a *Marvin* agreement is breached if the party charged with the duty of support fulfills his obligations after the underlying relationship ends. As we said earlier, it seems fairly plain that no breach occurs if the support obligation is met.[6] (Civ. Code, § 1657; *Leonard* v. *Rose* (1967) 65 Cal.2d 589, 592 [55 Cal.Rptr. 916, 422 P.2d 604] [where no time for performance is specified, a person who has promised to do an act in the future and who has the ability to perform does not violate his agreement unless and until performance is demanded and refused]; *Byrne* v. *Laura* (1997) 52 Cal.App.4th 1054, 1064 [60 Cal.Rptr.2d 908] [citing *Fincher* for the proposition that a *Marvin* agreement is enforceable against an estate when one of the parties to the agreement dies, but pointing out that the decedent performed while alive and therefore did not breach his duty of support; instead, the breach occurred *when his estate refused to provide support*].)

 *Marvin* and the decisions which followed it relied on the application of ordinary contract rules when considering support and property sharing agreements between unwed adults who were living together. (See *Marvin* v. *Marvin, supra,* 18 Cal.3d at pp. 665, 670-671, 674-675; *Whorton, supra,* 202 Cal.App.3d at pp. 452-453; *Kurokawa, supra,* 199 Cal.App.3d at pp. 990-991.) We do not read *Fincher* and its decisional progeny as formulating some special exception to the general rule that a breach does not occur if the obligor performs. Instead, the overly broad language used by those decisions is best viewed in recognition that most *Marvin* agreements are breached when the parties separate. To the extent *Fincher, Kurokawa* and *Whorton* stand for the blanket proposition that all *Marvin* agreements are automatically breached once the parties end their relationship, we refuse to follow such a rule.

---

[6]Alternatively, there has been no damage until the support payments stop. Actual damage as opposed to mere nominal damage is another essential element of a cause of action for breach of contract. (*Marketing West, Inc.* v. *Sanyo Fisher (USA) Corp.* (1992) 6 Cal.App.4th 603, 614 [7 Cal.Rptr.2d 859].) The statute of limitations does not begin to run until a cause of action accrues. (Code Civ. Proc., § 312.)

Apart from his reliance on *Fincher* and its offspring, respondent offers no rationale to support his position. Adopting respondent's position would do more than run afoul of long-standing principles of contract law. It also risks rendering *Marvin* agreements illusory, since a party could perform his support obligations for two years after the relationship ends, then stop, secure in the knowledge that the statute of limitations would have run by that point. Ultimately, such a rule would lead to absurd and unworkable results by requiring that parties to *Marvin* agreements sue at or soon after their relationships ended, even if the other party were performing. We decline to adopt such a rule.[7]

We hold instead that a *Marvin* agreement is breached when the party charged with a duty to perform refuses to do so. If the parties have separated, but the obligor performs as required by the *Marvin* agreement, there has been no breach, no cause of action has accrued, and the statute of limitations has not begun to run.[8] Since appellant filed her complaint approximately one month after her support payments allegedly stopped, the complaint was timely filed. The trial court therefore also erred in sustaining without leave to amend respondent's demurrer to appellant's fourth cause of action for declaratory relief to the extent appellant sought to base that claim on a *Marvin* agreement. (*Marvin* v. *Marvin*, *supra*, 18 Cal.3d at pp. 674-675 [declaratory relief claim is properly brought in seeking to enforce alleged *Marvin* agreement].)

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

For the reasons set forth above, we reverse the order dismissing appellant's first amended complaint and the order sustaining the demurrers to her first and fourth causes of action, but only insofar as she has pleaded a cause

---

[7]Holding that a *Marvin* agreement is breached merely because the parties' relationship has ended creates other potential problems. First, it would be tantamount to saying that the purpose of such agreements is to make enforceable one party's right to continue the relationship, a holding which is most likely contrary to public policy. (Accord, *Whorton*, *supra*, 202 Cal.App.3d at p. 457 ["Of course, one partner has a right to end the relationship, and the only issue is whether the facts support a monetary and/or property award to one of the partners."].) Second, if the end of the relationship were the act which caused a breach of the *Marvin* agreement, but the party claiming the duty of support or property division was the one to end the relationship, would that mean the party owing those duties had not breached the agreement?

[8]Our holding does not consider the applicability of the doctrine of anticipatory breach.

*See footnote, *ante*, page 1115.

of action based on breach of the support obligation of the alleged 1983 *Marvin* agreement. We affirm that portion of the order sustaining without leave to amend the demurrers to her third, fifth and seventh causes of action. We affirm that portion of the order sustaining with leave to amend the demurrers to appellant's second and sixth causes of action, each of which is barred either because waived on appeal or because appellant failed to amend or propose curative amendments. Appellant to recover her costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied August 7, 1997, and appellant's petition for review by the Supreme Court was denied October 15, 1997. Werdegar, J., and Brown, J., were of the opinion that the petition should be granted.