Filed 9/9/14  In re Infusion Pump Cases CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| IN RE INFUSION PUMP CASES. | G048748 <br><br> (Super. Ct. No. JCCP 4615) <br><br> ORDER MODIFYING OPINION <br> NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on August 20, 2014, be modified as follows:

On page 1, in the third editorial paragraph delete the last name "Martson" and replace it with "Marston" so that the attorney name reads "Hall R. Marston."

There is no change in the judgment.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| IN RE INFUSION PUMP CASES. | G048748 |
| | (Super. Ct. No. JCCP 4615) |
| | O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gail Andler, Judge.  Affirmed.

Hodes Milman Liebeck, Jeffrey A. Milman and Jason M. Caruso for Plaintiff and Appellant Susan Ziots.

Sedgwick, Ralph A. Campillo, Hall R. Martson and Christopher P. Norton for Respondents Stryker Corporation and Stryker Sales Corporation.

\*    \*    \*

In this coordinated proceeding, plaintiff Susan Ziots appeals from an order denying her motion to amend her individual complaint by identifying two Doe defendants.  Ziots originally brought suit against I-Flow, LLC (I-Flow), on several tort claims after suffering an injury from a pain pump used to inject an anesthetic to her shoulder joint following an orthopedic surgery.  More than three years after filing her complaint, Ziots learned that the true manufacturer of the pain pump was not the named defendant, but rather respondents, Stryker Corporation and Stryker Sales Corporation (collectively Stryker).

After this discovery, Ziots dismissed all claims brought against I-Flow and sought leave to amend her complaint to identify Stryker as two of the fictitious defendants named in the complaint, Does 1 and 2.  The court denied the motion to amend because the identification of Stryker was outside the three-year limitation for service on parties.  (See Code Civ. Proc., §§ 583.210, subd. (a), 583.250, subd. (a).)[1]  Ziots appealed from a "Judgment of dismissal," and identified the hearing at which leave to amend was denied, though no dismissal was ever entered.

Because the court's denial of leave to amend eliminates all issues between Ziots and Stryker, the order was equivalent to a final, appealable judgment, and we have jurisdiction to consider the merits of the appeal.  And despite Ziots's identification of a nonexistent dismissal, her notice of appeal, liberally construed, is adequate.

But Ziots's appeal is procedurally deficient for another reason:  the record Ziots designated is inadequate to address her contention that her failure to identify Stryker for three years was because of a partial stay of discovery.  The record does not contain the partial stay order.  To the extent the scope of the stay order is described indirectly in the record, it suggests the partial stay was no obstacle to Ziots discovering the true manufacturer.  Accordingly, we affirm.

---

[1]        All statutory references are to the Code of Civil Procedure.

2

FACTS

Ziots underwent an orthopedic procedure on her shoulder in October 2005. After the procedure, a postoperative pain pump was attached to her shoulder to deliver a steady dose of anesthetic directly to the joint. The medical records from the surgery described the pain pump as a "PainBuster catheter," which is a brand Ziots believed was manufactured by I-Flow. Ziots suffered injury to the cartilage in her shoulder joint, allegedly from the pump.

On October 2, 2009, Ziots filed a complaint in the Los Angeles County Superior Court asserting tortious conduct resulting in injury. In her complaint she identified I-Flow and 15 Doe defendants as the manufacturers of the pain pump or of the anesthetic used in the pump. More than eight months later, in May 2010, the Los Angeles County Superior Court coordinated the case with those of similarly situated plaintiffs in Orange County. The case was moved to the Orange County Superior Court.

In a series of joint case management statements, the parties in the coordinated proceeding suggested to the court that a "Short Form Complaint" be filed containing each plaintiff's individual allegations within 20 days of the filing of a "Master Complaint." In August 2010, the court, "[b]ased on agreement of counsel," approved the "Master Complaint" and the "Short Form Complaints" filed by the plaintiffs. The court then ordered the plaintiffs to serve product identification fact sheets within 90 days of August 31, 2010, and ordered defendants to serve product identification fact sheets within 30 days of receiving plaintiffs.

Ziots's "Short Form Complaint" identified the manufacturer of her pain-pump again as I-Flow, not Stryker, and the model of the pain pump as I-Flow's "Painbuster." In March 2011, I-Flow responded to Ziots's complaint and product identification sheet, stating, "The documentation provided by Plaintiff does not include a Reference Number/Model Number, Lot Number, chart sticker, or other information

3

confirming that the pump used during Susan Ziot's [*sic*] October 25, 2005 surgery was manufactured by I-Flow. The words and phrases contained in the documents such as 'PainBuster catheter' do not confirm product ID as to I-Flow."

It was not until March 2013 that Ziots obtained the information that identified Stryker as the true manufacturer of the pain pump through a subpoena and a deposition notice served on Dixie Regional Medical Center, where Ziots had received her surgery.

One week later, after Ziots identified Stryker, she dismissed I-Flow from the case without prejudice. On the same day Ziots sought leave of court to amend her complaint to identify Does 1 and 2 as Stryker Corporation and Stryker Sales Corporation. In her motion to amend, Ziots argued the attached "Amended Complaint" related back to the original complaint but made no mention of a stay on discovery affecting her ability to identify Stryker.

Stryker opposed the motion on the grounds it had not been served within three years of the original filing as required by section 583.210, subdivision (a), and that Ziots failed to account for an "unreasonable delay" in identifying Stryker. Ziots filed a reply, arguing that a stay order limiting discovery had prevented her from identifying Stryker within the three year period. However, she offered no evidence describing the scope of the stay or explaining why she could not have earlier learned the name of the true manufacturer.

The court denied Ziots's motion on the ground that Stryker had not been served within three years of filing the complaint. (See §§ 583.210, subd. (a), 583.250, subd. (a), 581, subd. (b)(4).) Ziots timely appealed from the "Judgment of dismissal under Code of Civil Procedure sections 581d, 583.250, 583.360, or 583.430," identifying the date of the dismissal as May 20, 2013, the day the court denied leave to amend. However, no dismissal was ever filed.

4

*Because the Trial Court's Order Denying Leave to Amend Leaves No Issues to be Tried or Determined, it Constitutes a Final, Appealable Judgment*

Because the question of appealability goes to a reviewing court's jurisdiction, we are "duty-bound" to assess the issue on our own motion. (*Olson v. Cory* (1983) 35 Cal.3d 390, 398.) "An order denying leave to amend a complaint is not appealable." (*Figueroa v. Northridge Hospital Medical Center* (2005) 134 Cal.App.4th 10, 12.) One exception to this rule of nonappealability is an order denying substitution of parties that has the effect of eliminating all issues between the plaintiff and a defendant. (*Ingram v. Superior Court* (1979) 98 Cal.App.3d 483, 489 (*Ingram*).) "Although an order denying leave to amend a complaint is not an appealable order [citation], nor are orders denying substitution of parties [citation] and granting a motion to strike parts of a pleading [citation], when such orders have the effect of eliminating issues between a plaintiff and defendant so that nothing is left to be determined, the order is a final judgment." (*Ibid.*) Here, the order denying leave fits the exception described in *Ingram*. The court denied Ziots the opportunity to substitute parties, a decision that ordinarily is not appealable. But the court's order denying leave meant there were no pending claims against Stryker. In other words, the order denying substitution of parties left no issues to be tried or determined between Ziots and Stryker, giving it the effect of a final judgment.

*Appellant's Notice of Appeal, Liberally Construed, Confers Jurisdiction to Review the Denial of the Motion for Leave to Amend*

Stryker contends the appeal should be dismissed because the notice of appeal was defective in that it identified a nonexistent dismissal order. We disagree.

Rule 8.100(2) of the California Rules of Court requires that notices of appeal be "liberally construed." The liberal construction rule, created due to the "'strong public policy in favor of hearing appeals on the merits'" (*Unilogic, Inc. v. Burroughs*

5

*Corp.* (1992) 10 Cal.App.4th 612, 624 (*Unilogic*)), is intended to "protect the right of appeal" (*D'Avola v. Anderson* (1996) 47 Cal.App.4th 358, 361). This right warrants protection so long as the grounds for appeal are reasonably clear and a respondent is unlikely to have been prejudiced or misled by the notice of appeal. (*Ibid.*) In determining whether the grounds for appeal are reasonably clear "a reviewing court may consider the contents of the designation of record," which, in this case, was primarily directed toward the motion for leave to amend. (*Id.* at p. 362.)

Stryker contends the notice of appeal does not deserve a liberal construction because it is "clear and unmistakable," not "'mere misdescription'" as set forth in *Unilogic*, *supra*, 10 Cal.App.4th at page 625. We find *Unilogic* distinguishable.

In *Unilogic* the appellant had intended to appeal the trial court's judgment on a fraud claim. (*Unilogic*, *supra*, 10 Cal.4th at p. 623.) However, the notice of appeal listed the judgment on the 10th cause of action (willful and malicious misappropriation of trade secrets) and on the 11th cause of action (injunctive relief to prevent appellant from disclosing trade secrets) but not the eighth cause of action — the claim regarding fraud. (*Id.* at p. 624-625.) The court concluded it was without jurisdiction to hear an appeal on the fraud claim: "'The rule favoring appealability in cases of ambiguity cannot apply where there is a clear intention to appeal from only part of the judgment or one of two separate appealable judgments or orders.'" (*Id.* at p. 625.)

Here, by contrast, Ziots's notice of appeal does not identify a separate, distinct ruling by the lower court; it only incorrectly describes the judgment being appealed. It identifies the correct hearing date. And the designation of record includes only one hearing date for the reporter's transcript: "Hearing on Susan Ziots' Motion for Leave to Amend." Similarly, the documents designated to be included in the clerk's transcript are almost all directed toward the motion for leave to amend. "'[M]ere misdescription'" of this form calls for the application of the rule of liberal construction.

(*Unilogic*, *supra*, 10 Cal.4th at p. 625.) Accordingly, we interpret the notice of appeal as being from the order denying leave to amend Ziots's complaint.

*The Record is Inadequate to Disturb the Order by the Trial Court Denying Ziots Leave to Amend*

Stryker also contends Ziots failed to provide an adequate record to review her contentions on appeal. We agree.

It is the appellant's burden to overcome the presumption of correctness afforded to orders and judgments by providing an adequate record to show affirmative error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) This presumption is "'an ingredient of the constitutional doctrine of reversible error.'" (*Ibid.*) If an appellant fails to provide an adequate record, the order appealed must be affirmed. (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)

Ziots contends the court erred in applying the three year dismissal statutes. (§§ 583.210, subd. (a), 583.250, subd. (a).) Ziots acknowledges that more than three years elapsed between the filing of the complaint and the service on Stryker. Ziots contends, however, that most of that three year period should be excluded pursuant to section 583.240, which provides, "In computing the time within which service must be made pursuant to this article, there shall be excluded the time during which any of the following conditions existed:" "(b) The prosecution of the action or proceedings in the action was stayed and the stay affected service." "(d) Service, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiff's control. Failure to discover relevant facts or evidence is not a cause beyond the plaintiff's control for the purpose of this subdivision." Ziots contends both of these subdivisions apply due to a stay of discovery that precluded Ziots from identifying the true manufacturer of her pain pump.

7

The record designated by Ziots suffers a fundamental flaw: it does not include the stay order that allegedly precluded Ziots from serving the discovery she needed to identify Stryker. Although the reporter's transcript makes several allusions to a partial stay, not once in the reporter's transcript or all six volumes of the clerk's transcript does there appear a description of exactly what was prohibited by the stay on discovery. Ziots's brief itself offers no clarification. It only states, "During the initial stages of this case, the parties were only allowed to engage in limited discovery."

What the record does reveal suggests Ziots was not limited by the stay. In argument on the motion to amend the complaint, the court described the stay as follows: "The court had previously indicated that the discovery stay would not limit the ability of the parties to do limited third party discovery to determine product identification by sending subpoenas and conducting limited depositions of those facilities and hospitals and other organizations and entities, but not treating physicians who had information about the products that were used in the surgery." "So it was the court's previous order, and the court still maintains the order that plaintiffs may serve deposition subpoenas to third parties, such as hospitals, surgical centers and similar types of entities and organizations for purposes of product identification, as long as proper notice is given." Ziots admits in her opening brief that the information ultimately identifying Stryker as the pain pump's manufacturer was revealed "[t]hrough the use of an additional subpoena and deposition notice," which suggests the partial stay was no obstacle to Ziots obtaining this information.

It is certainly possible the information Ziots needed to identify Stryker Corporation and Stryker Sales Corporation was legitimately cloaked by the partial stay's curtain. But possibility is not enough. In order to show error in the trial court's denial of leave to amend, Ziots needed to designate a record with sufficient evidence to demonstrate that identifying Stryker was impeded by the discovery stay — evidence conspicuously absent from the record.

## DISPOSITION

The judgment is affirmed.  Respondents Stryker Corporation and Stryker Sales Corporation shall recover their costs incurred on appeal.


IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.

9